**Earl A. PALLAS, Plaintiff,**

v.

**DRIV–RITE, INC., Defendant.**

**No. 65–CV–172.**

United States District Court
N. D. New York.

April 2, 1966.

Melvin & Melvin, Syracuse, N. Y., for plaintiff.

Mackenzie, Smith, Lewis, Michell & Hughes, Syracuse, N. Y., for defendant.

PORT, District Judge.

The issue before the court is, does this court have personal jurisdiction over the defendant corporation? The plaintiff bases his claim of jurisdiction upon service made pursuant to Rule 4(e) F.R.Civ. P. which provides in part,

> Whenever a statute or rule of court of the state in which the district court is held provides (1) for service of a summons * * * upon a party not an inhabitant of or found within the state, * * * service may * * * be made under the circumstances and in the manner prescribed in the statute or rule.

The state statute relied upon is New York's "long arm" statute, CPLR § 302.[1]

The complaint seeks damages by reason of alleged fraudulent representations made by the defendant's agent in inducing the plaintiff to enter into an agreement with the defendant.

The affidavits supporting and opposing defendant's motion to dismiss disclose the following facts which are not disputed. The defendant Driv-Rite, Inc. (Driv-Rite) is incorporated under, and licensed to do business in Oklahoma. Its principal office and place for the transaction of business is at Tulsa, Oklahoma.

Driv-Rite is not authorized to transact business in New York. It has no office in New York. Its advertising in newspapers included the Wall Street Journal and Syracuse Post Standard, both circulated in Onondaga County. Copies of the Post Standard ads are attached to the plaintiff's affidavit. They seek a "working partner" who "[m]ust be available immediately" and of whom a "$15,000 investment is required." The ads state, "[o]ther area available." "[C]omplete information" can be obtained by calling "Steve Rosner HA 2–0403," announces one ad; the other instructs those interested to "[w]rite Box F–215, The Post Standard."

The Post Standard is published in Syracuse and distributed throughout the area around Syracuse. HA 2 is a telephone exchange in the Syracuse area.

The defendant's affidavit alleges that it did, "advertise in the newspapers including the Wall Street Journal to the effect that it was attempting to locate distributors within the New York area; that in answer to such advertisement, the Plaintiff Earl A. Pallas did contact the Defendant and that by virtue of such contact the Defendant did have a representative come to the State of

---

1. § 302. *Personal jurisdiction by acts of non-domiciliaries*
   (a) Acts which are the basis of jurisdiction. A court may exercise personal jurisdiction over any non-domiciliary * * * as to a cause of action arising from any of the acts enumerated in this section, in the same manner as if he were a domiciliary of the state, if, in person or through an agent, he:
   1. transacts any business with the state; or
   2. commits a tortious act within the state, * * *.

New York and enter into an agreement with the said Earl A. Pallas, which agreement was transmitted for acceptance to Tulsa, Oklahoma. * * * [T]hat Defendant Corporation and Plaintiff eventually entered into the above mentioned contract at Tulsa, Oklahoma; that Plaintiff thereupon attended a training seminar at Tulsa, Oklahoma, at the expense of said Defendant and did return to New York at the end of such seminar."

It is further undisputed that the negotiations with Rosner at the Syracuse airport resulted, at that time and place, in the execution of a distributorship agreement by the plaintiff and the delivery by him to Rosner of $15,000 as "a license fee", pursuant to the terms of the agreement. As indicated above, the agreement was subsequently accepted and executed by the defendant at Tulsa, Oklahoma.

The plaintiff seeks damages of $15,150 comprised of the $15,000 "license fee" and $150 allegedly incurred in connection with a trip to Tulsa. The gravamen of plaintiff's claim is the alleged misrepresentation made by Rosner at the airport meeting.

The defendant argues that its activities do not constitute the transaction of "any business within the state" as that language is used in § 302(a) 1, CPLR, and consequently, there is a lack of jurisdiction over it requiring a dismissal of the action. The plaintiff places a contrary construction on the effect of those activities.

The plaintiff does not place jurisdiction on the commission of "a tortious act within the state", § 302(a) 2, CPLR. In view of the holding herein that the claim alleged arises out of the transaction of business within New York, it is not necessary to determine whether the making of the alleged misrepresentation within the state would suffice as a jurisdictional base.

This case is not wholly dissimilar to Singer v. Walker, one of the trilogy, reported as Longines-Wittnaur Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965) through which the Court of Appeals of New York has announced guidelines for determination of the scope and applicability of § 302(a) 1 & 2, CPLR. The complaint in Singer sought damages for personal injuries sustained when a geologist's hammer manufactured by an Illinois corporate defendant shattered while being used for its intended purpose in Connecticut by the infant plaintiff. Holding that the tortious conduct out of which the injury arose was committed in Illinois in connection with the manufacture and labeling of the hammer, the Court of Appeals refused to sustain jurisdiction bottomed on the commission of a tortious act in New York, § 302(a) 2. In Feathers v. McLucas, decided with Walker, the court made it clear that New York did not occupy the full constitutionally permissible area through which jurisdiction may attach to foreign domiciliaries because of tortious conduct.

The transaction of "any business" portion of the statute was not so restricted. The assumption "that Section 302 is as broad as the Federal Constitution would permit it to be," "in the absence of authoritative pronouncements by the New York courts indicating a narrower legislative intention." Agrashell, Inc. v. Bernard Sirotta Co., 344 F.2d 583 (2 Cir., 1965) is still valid.

Longines adopted the broad view of International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) as applied in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). The criteria by which the forum state may judge the sufficiency of the foreign domiciliary defendant's activities in order to exercise personal jurisdiction is not "simply mechanical or quantitative," but its activities are measured by their "quality and nature." 326 U.S. at p. 319, 66 S.Ct. 154. "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and pro-

tections of its laws." 357 U.S. at p. 253, 78 S.Ct. at p. 1240.

■ No purpose would be served in comparing the number of acts of a foreign corporation in adjudicated cases with those of the defendant whose conduct is being examined as a jurisdictional base, since the test is *what kind* of acts and not *how many*. The statute supplies the answer to how many.. It provides for the transaction of *"any* business within the state" out of which the cause of action arises. See Schneider v. J. & C. Carpet Co., Inc., 23 A.D.2d 103, 258 N.Y.S.2d 717 (1965)

An examination of the kind of activity that has sufficed to afford a jurisdictional hold may illumine, however slightly, the path to be followed.

The defendant foreign corporation in Longines sent mail to the plaintiff in New York; sent key officers to New York prior to and after the execution of the contract in Chicago for discussions concerning it; and "participated in the installation and testing of the machines", the warranty on which the plaintiff claims was breached.

The manufacturer of the hammer in Singer was subjected to jurisdiction because it had "shipped substantial quantities of its product into this State as the result of solicitation here through a local manufacturer's representative and through catalogs and advertisements and that the injury-causing hammer, purchased from a New York dealer, was one of such products." 15 N.Y.2d at p. 466, 261 N.Y.S.2d at p. 26, 209 N.E.2d at p. 81.

Jurisdiction in Agrashell depended "on the problem of who was responsible for the goods and trucks while they were travelling through New York." The case was remanded for resolution of this question after a full hearing. 344 F.2d at p. 589.

Citing Singer v. Walker, supra (presumably under Section 302(a) 1), the Court of Appeals affirmed a holding of jurisdiction on the sole ground that the plaintiff was injured while using a machine manufactured by a nondomiciliary whose only contact with New York was "that its products were manufactured not only for distribution throughout the nation but also for use in the New York market. The defendant expected or should reasonably have expected that its product would be sold in New York. It was engaging in a persistent course of conduct and deriving substantial revenue from goods used or consumed in this state." Lewin v. Bock Laundry Machine Company, 42 Misc.2d 599, 249 N.Y.S.2d 49, 53, aff'd 22 A.D.2d 854, 255 N.Y.S. 2d 466, aff'd 16 N.Y.2d 1070, 266 N.Y.S. 2d 391, 213 N.E.2d 686.

In all of these cases the defendant's activities qualified as "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protection of its laws." Hanson v. Denckla, supra, 357 U.S. at p. 253, 78 S.Ct. at 1240.

For other examples of minimal contacts that pass the test of purposeful transaction see Mediclean Corp. v. Mediclean, Inc., N.Y.L.J. 7–9–65, and Banco Espanol de Credito v. DuPont, 24 A.D.2d 445, 261 N.Y.S.2d 233 (Supplementary Practice Commentary by McLaughlin, McKinneys 1965 Cumulative Pocket Parts, CPLR, § 302, p. 48).

■ Turning now to an examination of Driv-Rite's activities; they afford a solid base for jurisdiction over the defendant pursuant to the provisions of Section 302(a) 1. By its advertising it not only went fishing for a "working partner" in New York State waters but seemingly landed one there. To accomplish its purpose it used local papers, a local mailing address, and a local phone number. It sent its representative into the state, by appointment, for the primary, if not the sole purpose of getting the plaintiff to sign a distributorship contract and to procure "$15,000 in cashier or certified check, as a license fee." Procuring the signature and the check were both accomplished in New York. The "Lease-Rate Computor", a form used by the defendant to compute "costs of

leasing" cars was prepared by Rosner at the conference with the plaintiff at the airport. The plaintiff's claim centers around the alleged misrepresentations in the "computor" which he says induced him to sign the agreement and part with his money.

These acts of the defendant's agent though accomplished with the utmost dispatch, in point of time, are meaningful, and meet the announced criteria which makes Section 302(a) 1 applicable. Here Rosner and the $15,000 over which the defendant had possession if not complete title "were protected by the laws of [New York] in a direct physical sense." Agrashell, Inc. v. Bernard Sirotta Co., supra, 344 F.2d p. 588.

For the reasons herein it is

Ordered that the defendant's motion be and the same hereby is denied.