**LUMBERMENS MUTUAL CASUALTY COMPANY, Plaintiff,**

**v.**

**The BORDEN COMPANY, Inc., Blackstone Mutual Insurance Company, Affiliated F. M. Insurance Company, United Engineers and Contractors, Inc., the Wickes Corporation, Vulcan-Cincinnati Corporation, Catalysts and Chemicals, Inc., and Monochem, Inc., Defendants.**

**No. 64 Civ. 1580.**

United States District Court
S. D. New York.

Jan. 31, 1967.

---

See also 241 F.Supp. 683.

Townley, Updike, Carter & Rodgers, New York City, for plaintiff, Philip D. Pakula, W. Wright Danenbarger, New York City, of counsel.

Cahill, Gordon, Reindel & Ohl, New York City, for defendant Catalysts, Douglas E. Cutler, Mathias E. Mone, New York City, of counsel.

## MEMORANDUM

TENNEY, District Judge.

Defendant Catalysts and Chemicals, Inc. (hereinafter referred to as "Catalysts") moves for an order pursuant to Rule 12(b) of the Federal Rules of Civil Procedure dismissing plaintiff's action against it on the grounds that the Court lacks jurisdiction over the subject matter and over the person of defendant Catalysts and that venue is improper.

In its complaint, plaintiff seeks a declaratory judgment that it is not liable to the Borden Company (hereinafter referred to as "Borden") with respect to certain accidents which Borden claims were covered by two policies of insurance issued by plaintiff. These accidents occurred at a Borden chemical plant located at Geismar, Louisiana. To the extent that plaintiff may be held liable to Borden, it seeks declaratory judgments against the other named defendants, including Catalysts, whom it claims were responsible for the various accidents.

Plaintiff seeks to sustain jurisdiction over the person of Catalysts on the grounds that said defendant is doing business in New York within the meaning of N.Y. CPLR § 301 or is transacting business in New York within the meaning of CPLR § 302. After careful consideration, the Court is of the opinion that jurisdiction over Catalysts cannot be upheld under either of these sections and, hence, plaintiff's action as against Catalysts must be dismissed. This makes consideration of Catalysts' other motions unnecessary.

### CATALYSTS IS NOT DOING BUSINESS IN NEW YORK.

Catalysts contends that the Court lacks jurisdiction over it since Catalysts is not doing business in New York within the meaning of § 301 of the CPLR. This section provides that a Court may exercise such jurisdiction over persons, property or status as might have been exercised heretofore. Although the power New York possesses to subject a foreign corporation to personal jurisdiction because it "does business" in New York is not conferred by any statute, (see McLaughlin, Practice Commentary, McKinney's CPLR § 301) it is clear that this is the test that must be satisfied in order to comply with the jurisdictional requirements of CPLR § 301.

The long-standing criterion for determining whether a foreign corporation is doing business within this state was set out in Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 267, 115 N.E. 915, 917

(1917), wherein it was stated that such corporation must do business "not occasionally or casually, but with a fair measure of permanence and continuity." More recently, the New York Court of Appeals spoke of the test in terms of a continuous and systematic course of business. Simonson v. International Bank, 14 N.Y.2d 281, 251 N.Y.S.2d 433, 200 N.E.2d 427 (1964). And in Elish v. St. Louis Southwestern Ry. Co., 305 N.Y. 267, 112 N.E.2d 842 (1953), it was stated that the mere solicitation of business by a foreign corporation within this state is insufficient. See Miller v. Surf Properties, Inc., 4 N.Y.2d 475, 176 N.Y.S.2d 318, 151 N.E.2d 874 (1958).

■ An examination of Catalysts' activities in this state fails to disclose sufficient contacts to sustain a finding that Catalysts is doing business here. Dr. Reitmeier, the president of Catalysts, has stated the following uncontroverted facts in his affidavit: Catalysts is a Delaware corporation whose principal and only place of business is in Louisville, Kentucky; Catalysts has no registered agent in New York, no office or place of business in New York, no telephone number in New York, no bank account in New York, no officers or employees working regularly or residing in New York. Furthermore, Catalysts owns no stock in any company located in New York, and no shareholders' or directors' meetings are held in New York. All sales are f. o. b. Louisville, Kentucky; no Catalysts products are warehoused in New York, and no Catalysts products have been shipped into New York since 1962.

To support jurisdiction under CPLR § 301, plaintiff points to several activities by Catalysts in New York. In the first place, plaintiff points to a statement in Dr. Reitmeier's affidavit wherein it is admitted that Catalysts' representatives occasionally travel to New York to confer with its engineering company customers. In 1963, eleven visits were made to Catalysts' New York customers. In 1964, up until the date Catalysts was served in this action, six such visits were made. These calls were made either in response to inquiries concerning Catalysts' products or on occasions when Catalysts was of the opinion that the customer had obtained or might obtain a contract for a plant in which a catalyst would be required. Furthermore, Reitmeier's deposition admits that these representatives were almost always supplying technical information to its prospective customers. Plaintiff argues that since it has been admitted that most of Catalysts' representatives were graduate engineers, they were doing more than merely soliciting business in New York, and were performing a technical service function.

It is clear that the representatives Catalysts sent to New York were essentially sales representatives. The fact that they may have performed a technical service function was incidental to their main job as salesmen. The technical nature of Catalysts' product made it imperative that the salesmen be highly trained in order to explain the intricacies of the product and answer inquiries concerning its use.

■ The fact that New York cases have held that mere solicitation is not sufficient to subject a foreign corporation to jurisdiction under § 301 (Elish v. St. Louis Southwestern Ry. Co., supra), does not necessarily mean that merely any type activity carried on in addition to solicitation is sufficient. Furthermore the Court doubts that the type of activity engaged in by Catalysts meets the standards set forth in Tauza v. Susquehanna Coal Co., supra. The sporadic trips made into New York by Catalysts' representatives and the nature of their activities here certainly cannot be held to be the type of regular, systematic and continuous activity necessary to sustain jurisdiction under CPLR § 301. See, e. g., Greenberg v. R.S.P. Realty Corp., 22 App.Div.2d 690, 253 N.Y.S.2d 344 (2d Dep't 1964); Irgang v. Pelton & Crane Co., 42 Misc.2d 70, 247 N.Y.S.2d 743 (S.Ct.1964).

Two other arguments made by plaintiff require little discussion. Lawrence

Pricher, a director of Catalysts, resides in New York and is an officer of the New Jersey Zinc Company which owns 16 per cent of Catalysts stock. From these facts, plaintiff asks the Court to find that Pricher's activities in New York on behalf of Catalysts, together with Catalysts' other activities in this state, constitute "doing business" within the meaning of CPLR § 301.

However, if a foreign corporation is not doing business in New York, the mere fact that an officer resides in the state does not bring the corporation within the jurisdiction of New York. Joseph Walker & Sons v. Lehigh Coal & Nav. Co., 8 Misc.2d 1005, 167 N.Y.S.2d 632 (Sup.Ct.1957); see Hulick v. Petroleum Corp., 198 App.Div. 359, 190 N.Y.S. 377 (1st Dep't 1921). In addition, there is no support for plaintiff's assertion that Pricher performs a directorial function for Catalysts in New York. Finally, as Pricher's deposition shows, New Jersey Zinc is a minority shareholder of Catalysts and exercises no control over it. In no sense can one corporation be considered the subsidiary of the other.

For the foregoing reasons, Catalysts cannot be held to be "doing business" in New York under CPLR § 301.

## CATALYSTS IS NOT TRANSACTING BUSINESS IN NEW YORK.

Catalysts further contends that the Court lacks jurisdiction over it since it was not transacting business in New York within the meaning of § 302(a) (1) of the CPLR. This statute provides, in pertinent part:

> As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary * * * who in person or through an agent:

> 1. transacts any business within the state * * *.

This statute was passed largely as a response to the Supreme Court's decisions in International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957). In these cases, the bases for a state's assertion of in personam jurisdiction over a non-resident defendant were expanded so that jurisdiction could be upheld as long as the defendant had certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice'", International Shoe Co. v. State of Washington, supra, 326 U.S. at 316, 66 S.Ct. at 158, and that the suit was based on a contract which had "substantial connection" with the state. McGee v. International Life Ins. Co., supra, 355 U.S. at 223, 78 S.Ct. 199. However, in Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958), the Supreme Court tempered the views it expressed in the *International Shoe* and *McGee* cases, by declaring that when a state sought to assert jurisdiction over a non-resident defendant "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Id. at 253, 78 S.Ct. at 1240.

The leading New York case interpreting the transaction of business provision of CPLR § 302 is Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), wherein the New York Court of Appeals was able to uphold jurisdiction after it found the defendant to have "engaged in some purposeful activity in this State in connection with the matter in suit." Id. at 457, 261 N.Y.S.2d at 18, 209 N.E.2d at 75. In that case, plaintiff, a New York corporation, sued defendant, a Delaware corporation having its principal place of business in Chicago, Illinois, for breach of warranty in the manufacture and sale of certain machines by the defendant to the plaintiff. Preliminary negotiations between the parties were carried on in New York, but the contract itself was executed in Chicago. After execution, defendant's

officers and employees twice came to plaintiff's New York plant to discuss certain problems in connection with the performance of the contract. A supplemental contract was later executed in New York and the machines were thereafter shipped to plaintiff's plant. Soon after several of defendant's employees came to New York to install and test the machines, certain defects were discovered and the plaintiff instituted suit.

The Court held that even though the formal execution of the contract had not occurred in New York, "the statutory test may be satisfied by a showing of other purposeful acts performed by the appellant in this State in relation to the contract, albeit preliminary or subsequent to its execution." Ibid. After examining the various activities engaged in by the defendant in New York—the preliminary negotiations, the execution of a supplemental contract, the shipment of the machines into the state and the testing of the machines by defendant's employees—the Court was able to find that, taken in combination, defendant's activities in New York amounted to the transaction of business within this state. Hence, the principles laid down by the Supreme Court in requiring the non-resident defendant to have certain "minimum contacts" with the forum state and to have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" and that the contract have "substantial connection" with New York, were deemed satisfied.

Since the landmark decision in Longines-Wittnauer Watch Co. v. Barnes & Reinecke, Inc., supra, both federal and state courts interpreting the phrase "transacts any business within this state" have sought to determine whether the non-resident defendant purposefully availed itself of the privilege of conducting activities within New York. United States v. Montreal Trust Co., 358 F.2d 239 (2d Cir.), cert. denied, 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966). One New York court even called this test

the *sine qua non* of each case where jurisdiction is founded on CPLR § 302 (a) (1). Ellis v. Smith Transfer Corp., 24 App.Div.2d 871, 264 N.Y.S.2d 414 (2d Dep't 1965).

With the above principles in mind, the Court turns to an examination of the facts in the instant case to determine whether Catalysts transacted any business in New York within the meaning of § 302 of the CPLR.

Vulcan, an Ohio corporation, is an engineering construction company that was interested in doing the engineering work for Borden's proposed chemical plant in Louisiana. Catalysts, a Kentucky corporation, is primarily in the business of selling catalysts for use in such chemical plants.

Commencing in 1959 and extending over a long period of time, Catalysts and Vulcan, in both Kentucky and Ohio, discussed the problems involved with the use of a certain type of gas reformer catalyst, and the business aspects of a contract to be entered into by Vulcan and Catalysts. On one occasion, a Borden representative called Catalysts in Kentucky to discuss some of the technical problems involving the use of the catalysts.

On April 4, 1960, Catalysts' president came to New York and participated with representatives of Borden and Vulcan in a discussion concerning the use of a proposed catalyst for Borden's plant. Soon after the meeting, the parties dropped all plans to use this particular type of catalyst.

On November 3, 1960, a discussion of the proposed plant and the use of another type catalyst was held in New York between representatives of Borden and Vulcan. There is a dispute as to whether a representative of Catalysts was present at this meeting. Even if Catalysts was not present, it is clear that during this period Vulcan and Catalysts were engaged in long-distance consultations (no part of which took place in New York) concerning a catalyst for Borden's plant.

On November 14, 1960, representatives of Vulcan and Borden continued discus-

sion of the catalyst at a New York meeting. It is not denied that Vulcan consulted with Catalysts by long-distance telephone call during this meeting.

In January 1961, Vulcan and Borden entered into a contract for the Louisiana chemical plant. Although no mention was made of Catalysts, the contract provided for the supplying of a catalyst of a type produced by Catalysts.

In August 1961, Vulcan and Catalysts signed a purchase order whereby Catalysts agreed to supply the catalyst for the plant. This order was signed by Vulcan in Ohio and delivered to Catalysts in Kentucky. It was provided that shipment would be made directly to Borden at the Louisiana plant. Vulcan was given the election of transmitting Catalysts invoices to Borden for payment by Borden directly to Catalysts. Both Vulcan and Borden were given full inspection rights to the catalysts. Finally, it was provided that if the catalyst should fail to perform satisfactorily, Catalysts would supply a substitute catalyst or else refund the full purchase price. Borden was permitted to retain the original catalyst or a substitute until either a more satisfactory substitute had been supplied by Catalysts or the full purchase price had been refunded.

After shipment of the catalyst to Louisiana, Catalysts' representatives visited the plant both before and after the accident.

On June 23, 1962, the hydogenerator containing the catalyst bulged, causing substantial damage.

On August 21, 1962, representatives of Vulcan and Borden met in New York to discuss the failure of the hydrogenerator. It is disputed whether a representative of Catalysts was present at this meeting.

It is agreed that another meeting was held in New York on September 20, 1962, at which time a representative of Catalysts was present. At this meeting Catalysts agreed to take back its catalyst and give Borden a credit memo which would be usable toward the purchase of a catalyst by Borden from Catalysts.

■ From these facts it is clear that the Court lacks jurisdiction over Catalysts under CPLR § 302(a) (1). In the first place, in no sense can the discussions commencing in 1959 and terminating after the April 4, 1960 meeting when all plans to use a particular gas reformer catalyst were dropped be considered as complying with the requirements of CPLR § 302(a) (1). Even if the Court assumes that these activities constitute the transaction of any business,[1] it is clear that the cause of action did not arise out of this "transaction". The cause of action in this case is an action framed either in negligence or on breach of warranty, based on the bulging of the hydrogenerator in June 1962. The type of catalyst in the generator at the time of the accident was not chosen by the parties until 1961 and bears no relation to the type of catalyst under discussion in 1959 and 1960. Hence, it cannot be said that the instant cause of action arises out of the alleged transaction of business in 1960.

■ Secondly, even when taken together, the activities carried on in New York by Catalysts, beginning with the November 1960 negotiations, continuing through the Vulcan-Borden contract in January 1961, the Vulcan-Catalysts contract in August 1961, and culminating in the settlement discussions in 1962, do not constitute the transaction of business in New York by Catalysts within the meaning of CPLR § 302.

To begin with, Catalysts never entered into any contract in New York with Borden. The only contract that Catalysts entered into was with Vulcan and this was executed outside of New York. Plaintiff's contention that Vulcan acted as Catalysts' agent during the negotiations culminating in the January 1961 New York contract and thus was a party to this contract is without merit. Vulcan and Catalysts were two completely sep-

[1]. Pg. 16. This assumption is quite doubtful since no business was transacted by the parties as a result of these early discussions and the April 4, 1960 meeting.

arate companies. No mention whatsoever was made of Catalysts in the contract. It was entered into solely for the benefit of the contracting parties. The fact that the Vulcan-Catalysts contract was not completed until seven months after the signing of the Vulcan-Borden contract is strong evidence that Borden and Vulcan did not have Catalysts specifically in mind in January 1961. Furthermore, cases cited by plaintiff which established an agency relationship in order to confer jurisdiction under CPLR § 302 are distinguishable since all involved situations where an exclusive dealer was suing his foreign distributor for breach of contract. See Standard Wine & Liquor Co. v. Bombay Spirits Co., 25 App.Div.2d 236, 268 N.Y.S.2d 602 (1st Dep't 1966); A. Millner Co. v. Noudar Lta., 24 App.Div.2d 326, 266 N.Y.S.2d 289 (1st Dep't 1966); Schneider v. J & C Carpet Co., 23 App.Div.2d 103, 258 N.Y.S.2d 717 (1st Dep't 1965).

In addition to the fact that Catalysts never executed a contract in New York with either Vulcan or Borden,[2] there was no substantial performance by Catalysts in New York under either contract. No catalyst was ever sold on the New York market. No catalyst was ever shipped to New York.[3] None of Catalysts' personnel ever entered New York to install, test or repair any Catalysts product. In no sense can it be said that Catalysts engaged in purposeful activity in connection with the sale of its product in the New York market. See Singer v. Walker, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965); Buckley v. Redi-Bolt, Inc., 49 Misc.2d 864, 268 N.Y.S.2d 653 (S.Ct.1966). On the contrary, all substantial performance under both the Vulcan-Borden and Vulcan-Catalysts contracts occurred at Borden's plant in Louisiana.

In any consideration of Catalysts' activities in New York, it is necessary to follow the admonition in Pallas v. Driv-Rite, Inc., 252 F.Supp. 582, 585 (N.D.N.Y.1966) that the test is what kind of acts and not how many the nonresident defendant engaged in in New York. Catalysts' activities in New York may be divided into two distinct segments—preliminary negotiations culminating in the January 1961 contract between Vulcan and Borden, and settlement discussions pursuant to the August 1961 contract between Vulcan and Catalysts.

Plaintiff attempts to place great weight on the fact that a representative of Catalysts was physically present in New York on November 3, 1960 for discussions leading to the Vulcan-Borden contract and on August 21 and September 20, 1962, for settlement discussions with Borden. Even if Catalysts did not dispute its presence on two of these three dates, mere physical presence in New York would be a slender thread upon which to uphold jurisdiction as against Catalysts. See City of New York v. Continental Vitamin Corp., 254 F.Supp. 845 (S.D.N.Y.1966). As noted by Professor McLaughlin, the physical presence of the defendant should not insure jurisdiction.[4] At the same time, the Court is fully aware of the holding in Singer v. Walker, supra, wherein the New York Court of Appeals upheld jurisdiction under CPLR § 302 where it found purposeful acts engaged in by the defendant corporation in New York even though there was no physical presence here. But the type of purposeful activity the Court was able to find in the Singer case —shipment by defendant of substantial quantities of its product into this state as a result of personal solicitation and through catalogues and advertisements —is not present in the instant case.

2. Pg. 18. "[I]f the contract is made outside New York, it would be exceptional to find a transaction." McLaughlin, Practice Commentary, McKinney's CPLR § 302 (1966 Supp.) at 64.

3. Pg. 18. "[T]he failure of a nonresident defendant to ship goods into the state pursuant to a contract will rarely rise to the level of a transaction." McLaughlin, Practice Commentary, McKinney's CPLR § 302 (1966 Supp.) at 64.

4. Pg. 20. McLaughlin, Practice Commentary, McKinney's CPLR § 302 (1965 Supp.) at 72.

■ In 1960–61, the only "purposeful" activity Catalysts engaged in in New York was as a participant in negotiations culminating in a contract to which Catalysts was not a party and was in no way involved. Since one court in this district has already held that New York negotiations culminating in a contract did not establish jurisdiction under CPLR § 302 as against one of the *parties* to the contract, Liquid Carrier Corp. v. American Marine Corp., 65 Civ. 227 (S. D.N.Y. Sept. 22, 1965), appeal docketed, No. 30161, 2d Cir., Nov. 30, 1965, it would be anomalous to hold Catalysts in this instance. The fact that Catalysts participated in the Vulcan-Borden negotiations in the hope that it might be to its eventual economic benefit if Vulcan could secure the contract with Borden is too tenuous a reason to sustain jurisdiction against Catalysts.

The only other "purposeful" activity engaged in by Catalysts in New York was as a participant in the settlement discussions in 1962. Plaintiff claims that since these meetings and the subsequent settlement took place pursuant to the Vulcan-Catalysts contract, there was performance of this contract in New York and hence jurisdiction under CPLR § 302. To begin with, the Court, after reading the language of the Vulcan-Catalysts contract, has serious doubts whether the terms of the contract obligated Catalysts to come to New York to discuss the defective catalyst with Borden and arrange a settlement. Even if there was such an obligation, the presence of Catalysts at a New York meeting to discuss performance of a contract to which Borden was not a party, which contract was entered into out of state and under which contract substantially all performance took place in Louisiana, is clearly not the type of purposeful activity required to sustain jurisdiction under CPLR § 302.

■ It is true that in the *Longines-Wittnauer* case, supra, jurisdiction was upheld where the defendant performed certain acts in New York preliminarily and subsequent to a contract that was executed elsewhere. But in that case the type of acts performed by the nonresident defendant could truly be held to be purposeful activity in New York, as contrasted with the "scattered activity" in New York by Catalysts in this instance. Harvey v. Chemie Grunenthal, 354 F.2d 428, 430 (2d Cir. 1965), cert. denied, 384 U.S. 1001, 86 S.Ct. 1923, 16 L.Ed.2d 1015 (1966). In addition, the crucial factors that Catalysts never entered into a contract with Borden and that substantially all performance under both contracts occurred in Louisiana dictate against the Court's holding Catalysts amenable to suit under CPLR § 302(a) (1).

Finally, the Court is of the opinion that to extend the reach of New York's "long-arm" statute to cover Catalysts in this instance would be to go much further than any New York case has gone and would do violence to the principles enunciated by the Supreme Court in Hanson v. Denckla, supra, McGee v. International Life Insurance Co., supra, and International Shoe Co. v. State of Washington, supra.

Since the Court is of the opinion that no jurisdiction over the person of Catalysts was ever obtained in this suit, plaintiff's complaint as against Catalysts must be dismissed.

So ordered.