**Kenneth CHERTOK, Plaintiff,**

v.

**ETHYL CORPORATION OF CANADA, Ltd., Defendant.**

**No. 71 Civ. 980.**

United States District Court, S. D. New York.

May 3, 1972.

J. John Lawler, New York City, for plaintiff.

Cahill, Gordon, Sonnett, Reindel, & Ohl by Denis McInerney, John H. de Boisblanc, and Joseph A. Clark, III, New York City, for defendant.

EDELSTEIN, Chief Judge.

## OPINION

Plaintiff, Kenneth Chertok (Chertok), instituted suit in New York Supreme Court, New York County, against defendant, Ethyl Corporation of Canada, Ltd. (Ethyl of Canada), for the breach of an alleged finder's fee contract. Defendant has moved pursuant to F.R.Civ. P. 12(b) (2) to dismiss the complaint for lack of *in personam* jurisdiction.

On February 3, 1971, plaintiff attempted service of the complaint upon

Ethyl (of Canada) by serving Ethyl Corporation, the defendant's parent company, at the latter's office in New York City. On March 4, 1971, Ethyl (of Canada) removed the action to this court pursuant to 28 U.S.C. § 1441. The removal was grounded upon diversity of citizenship. 28 U.S.C. § 1332. Thereafter, on March 5, 1971, Mr. Kenneth A. Freberg, President of Ethyl (of Canada), was personally served with a summons and verified complaint at defendant's principal place of business in the city of Toronto, Ontario, Canada.

There is substantial agreement as to the facts.[1] Ethyl is a Canadian corporation engaged in the manufacture and sale of various petroleum chemicals with its sole and principal place of business located at Toronto, Ontario, Canada. It is a subsidiary of Ethyl Corporation, a Virginia corporation maintaining an office in New York. Ethyl (of Canada) is not and never has been licensed or otherwise qualified to do business in the State of New York or any other part of the United States. It owns no real or personal property situated in New York, nor does it have an office, agent, or other representative for the purpose of transacting business within the State. Ethyl (of Canada) does not manufacture, solicit, sell, ship, or advertise in New York, nor does it maintain any telephone listings here. All of Ethyl's income has resulted from activities which are carried on solely in Canada.

In March 1970 plaintiff Chertok's associate, John H. Coleman, contacted Robert H. Shannon, the manager of defendant's Chemical Products Department, concerning Ethyl's possible interest in acquiring certain mineral concessions in Ethiopia. This contact was made by telephone call to Toronto, Canada. Coleman represented that Chertok had an exclusive and preferred position on these concessions. Subsequently a meeting took place in Toronto between Mr. Chertok and Mr. Shannon. At this meeting it was stated that "if Ethyl Ltd.'s interest should develop further, the parties would have to negotiate an agreement to compensate Chertok at or prior to the time of signing of such a concession agreement with the Ethiopian government." (Shannon affidavit at 2.) Thereafter several telephone conversations occurred between Chertok (who was in New York) and Shannon (who was in Canada). The substance of these calls was incorporated in a letter from Shannon to Chertok, at the latter's request. This letter confirmed their understanding. In addition it advised Chertok of the forwarding of one thousand dollars ($1,000.00) to him. Further telephone conversations resulted in a revision of their understanding to comply with Chertok's requests. Specifically, the revision reflected that "should our [Ethyl's] interest develop further, it would be necessary to negotiate a finder's fee 'and an eventual percentage of the net profits' if such profits ever came into being." (Shannon affidavit at 3.)

Shannon admits a total of three (3) trips to New York during the ensuing months. The initial one occurred in mid-March for the purpose of obtaining technical information about Ethiopian mineral resources from John Carman, Director of Technical Services for the United Nations. Shannon remained for only a few hours, and it appears that Chertok was unaware of this visit.

The second trip occurred on May 21, 1970. On this trip three separate meetings were held at various locations. Shannon and D. S. Kerby, an independent geological consultant retained by Ethyl (of Canada), flew to New York and met with Chertok at the offices of Ethyl Corporation, at which time Shan-

---

1. This is made clear by the following excerpt from plaintiff's memorandum of law in opposition to the instant motion (at 1)

"The affidavit of Robert H. Shannon [manager of the Chemical Productions Department of Ethyl (of Canada)] submitted in support of defendant's motion and the documents annexed thereto as exhibits are an excellent source of what occurred in this matter."

non handed Chertok a letter incorporating the terms of the revised understanding, and also informing Chertok of a recommendation that he be paid a thirty-five hundred dollar ($3,500.00) fee for performing the following services:

"(1) for using your [Chertok's] good offices to acquire restricted geological and exploration reports which we [Ethyl of Canada] had no knowledge of nor could obtain from the Mines Ministry of Ethiopia.

"(2) for arranging a meeting for a discussion with the Minister and Vice-Minister with our consulting geologist to obtain first-hand interpretations of such data and other terms and conditions in respect to exploration in Ethiopia.

"(3) for exclusive access to this information through yourself [Chertok] and a 15 day first refusal right in respect to certain concessions in Ethiopia." (Exhibit 5 to defendant's moving papers)

Thereafter, Chertok, Shannon and Kerby proceeded to the Ethiopian Consulate to negotiate with the Ethiopian Minister and Vice-Minister of Mines who had recently arrived in New York from Ethiopia for purposes totally unrelated to the Chertok matter. This May 21, date and location were pre-arranged by Chertok to accord with the convenience of the Ethiopian officials during their brief stay in New York. The negotiations proved inconclusive. After dinner with Chertok, Shannon and Kerby returned to Toronto.

The third visit to New York was a social one as Shannon accompanied his daughter to the Juilliard School of Music. While here, however, Shannon had lunch with Chertok, but little, if any, business was discussed.

Thereafter there were more telephone conversations between Shannon and Chertok which proved to be fruitless. On October 11, 1970, Shannon learned that no agreement with the Ethiopian Government would be possible unless technical personnel were sent overseas. This was in conflict with the purported understanding of May 21, 1970. Be that as it may, no agreement concerning the concessions was ever forthcoming. Then the instant suit was commenced by Chertok.

Plaintiff concedes that defendant was not doing business in New York at the time in question. Simonson v. International Bank, 14 N.Y.2d 281, 251 N.Y.S. 2d 433, 200 N.E.2d 427 (1964); Lumbermens Mutual Casualty Company v. Borden Company, 265 F.Supp. 99, 102 (S.D.N.Y.1967). He contends that Ethyl (of Canada) subjected itself to the *in personam* jurisdiction of the New York courts by transacting business within the meaning of C.P.L.R. Section 302(a) (1). Plaintiff maintains that the visits by Shannon to New York concerning the Ethiopian concessions, the execution of the alleged finder's fee agreement, the payment in New York of certain fees and the numerous telephone conversations between Shannon and Chertok are sufficient minimum contacts "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice,'" International Shoe Co. v. State of Washington et al., 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945). Moreover, plaintiff contends that the instant suit is based upon a contract which has "substantial connection" with the State of New York. McGee v. International Life Ins. Co., 355 U.S. 220, 223, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

To the contrary, defendant asserts that these contacts were infrequent, isolated, and an accommodation, and hence wholly insufficient to form the requisite jurisdictional predicate under C.P.L.R. Section 302(a) (1). Defendant emphasizes this position by vigorously asserting that it did not engage in any acts by which it purposefully availed itself of the privilege of conducting activities within the State of New York, thus invoking the benefits and protections of its laws. Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). After careful consideration of

all the facts the court finds these contacts described by the plaintiff as insufficient to sustain *in personam* jurisdiction under C.P.L.R. Section 302(a) (1). Accordingly, the motion is granted.

■ Since the jurisdiction of federal courts over an action removed from a state court under 28 U.S.C. § 1441 depends upon the jurisdiction of the state court before removal, it is necessary to determine if the New York Supreme Court acquired personal jurisdiction over Ethyl (of Canada) before the removal. Liquid Carriers Corp. v. American Marine Corp., 375 F.2d 951 (2d Cir. 1967); Lambert Run Coal Co. v. Baltimore & Ohio R.R., 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671 (1922). As this is a diversity case relevant New York law must be examined in order to resolve the issues presented. Arrowsmith v. United Press Int'l., 320 F.2d 219 (2d Cir. 1963); Beja v. Jahangiri et al., 453 F.2d 959 (2d Cir. 1972); Harvey v. Chemie Grunenthal, 354 F.2d 428, 430 (2d Cir. 1965). In the instant case the parties and court agree that C.P.L.R. Section 302(a) (1) and C.P.L.R. Section 313 are the applicable provisions.[2] Simply stated two criteria must be met before *in personam* jurisdiction can be sustained under these sections. (1) The party must engage in the transaction of business in New York (2) out of which the cause of action arises.

In three leading cases, Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970); Glassman v. Hyder, 23 N.Y.2d 354, 296 N.Y.S.2d 783, 244 N.E.2d 259 (1968); and McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 283 N.Y.S.2d 34, 229 N.E.2d 604 (1967), the New York Court of Appeals has interpreted the transaction of business provision in an attempt to define more clearly the contours of its jurisdictional reach. The dispositions in each of these three cases clearly demonstrate that "the test is what kinds of acts and not how many." Lumbermens Mutual Casualty Company v. Borden Company, *supra*, 265 F.Supp. at 106. Therefore, it is axiomatic that there are no mechanical or quantitative rules to which a court may point for resolution of this issue. Schroeder v. Loomis, 46 Misc.2d 184, 259 N.Y.S.2d 42, 45 (Sup.Ct. Broome County 1965); Franklin National Bank v. Krakow, 295 F.Supp. 910, 918 (D.D.C.1969).

In *Parke-Bernet*, a non-domiciliary arranged to "attend" a New York auction via the telephone. A system was devised whereby an employee of the plaintiff was to receive bids from the defendant over the telephone and place them at the latter's direction in New York. Having successfully bid $96,000 for two paintings, the non-domiciliary reneged and refused to pay. In sustaining jurisdiction, a unanimous Court of Appeals stated:

"It is important to emphasize that one need not be physically present in order to be subject to the jurisdiction of our courts under CPLR 302 for, particularly in this day of instant

---

2. Section 302(a) (1) of the C.P.L.R. states, in pertinent part:

Personal jurisdiction by acts of nondomiciliaries

(a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who in person or through an agent:

1. transacts any business within the state.

Section 313 of the C.P.L.R. provides, in pertinent part:

A person . . . subject to the jurisdiction of the courts of the state under

section . . . 302 . . . may be served with the summons without the state, in the same manner as service is made within the state, by any person authorized to make service within the state who is a resident of the state or by any person authorized to make service by the laws of the . . . country in which service is made or by any duly qualified attorney, solicitor, barrister or equivalent in such jurisdiction.

F.R.Civ.P. 4(e) permits the extra-territorial service provided for in C.P.L.R. Section 313, *supra*.

long-range communications; one can engage in extensive purposeful activity here without ever actually setting foot in the state."

26 N.Y.2d at 17, 308 N.Y.S.2d at 340, 256 N.E.2d at 508 (citations omitted)

It is significant to note, however, that in footnote 2 of its opinion the court made clear that its result was dictated by defendant Franklyn's engagement in purposeful activity through this method of bidding. The court stated:

"It is sufficient to point out that in each of those cases, [cases relied upon by defendant Franklyn] all of which involved agents who were suing their principals, the plaintiff was relying on his own activities within the state, and not those of the defendant, as the basis for jurisdiction. In other words, in no one of these cases had the defendant himself engaged in purposeful activity within the State nor had the cause of action arisen out of transactions with third parties conducted through an agent."

26 N.Y.2d at 19, 308 N.Y.S.2d at 341, 256 N.E.2d at 509.

Glassman v. Hyder involved a suit for real estate commissions. There, a resident licensed real estate broker, plaintiff Glassman, initiated a proposed sale of New Mexico realty owned by the non-domiciliary owners. Negotiations were transacted by telephone and mail. At no time were the owners physically present in New York. The owners corresponded both with the prospective buyer and the plaintiff, who were in New York, but no sale was ever consummated. The plaintiff brought suit for failure to pay the agreed commissions. In affirming the dismissal of the complaint for lack of jurisdiction the court reasoned that the two sets of negotiations, those between the broker and the owners, and the others between the owners and the prospective buyer directly, were " . . . so closely related as to justify viewing them as a single entity." 23 N.Y.2d at 362, 296 N.Y.S.2d at 789, 244 N.E.2d at 263. The court cautioned, however, that

"[t]he acts of the independent broker within New York should not . . . be attributed to the owners so as to become acts of the owners in New York." *Id.* Therefore, in concluding that there was no transaction of business by the owners within New York, the court stated:

"The brokerage contract was brought about through the initiative of the broker, who telephoned New Mexico and proffered his services. While the owners corresponded with both the broker and the prospective buyer, this correspondence failed to elaborate or even reduce to writing the oral brokerage commitment sued upon."

Clearly the court failed to find any purposeful activity in New York by the owners. Moreover, the cause of action did not arise out of the transaction of business within New York.

Finally, in McKee Elec. Co. v. Rauland-Borg Corp., it was pointed out that mere physical presence in the New York forum is not such a talisman as would make all affairs of business New York transactions. To be sure "physical presence in the state either during preliminary negotiations, or during execution or performance of the contract is considered in determining in a particular case whether one has engaged in 'purposeful activity' or has invoked the protection of New York's laws, such as to constitute 'transacting business' for the purposes of CPLR § 302(a) (1)." Franklin National Bank v. Krakow, *supra*, 295 F. Supp. at 918, citing Longines-Wittnauer Co. v. Barnes Reinecke, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965).

In *McKee* the defendant manufacturer was in a similar position as is Ethyl (of Canada) in that it maintained no place of business or telephone listing in New York. There were no officers, agents, employees or property in New York. All of defendant's products were sold in New York by independent distributors. Less than five percent (5%) of defendant's total sales were made to these New

York distributors. Orders were filled in Chicago and mailed f.o.b. that city.

Through an informal arrangement McKee became one of defendant's New York distributors. Thereafter difficulties resulted. In an attempt to resolve these difficulties the defendant sent a representative to New York. His efforts proving unavailing. Consequently another representative was sent to New York to confer with McKee and the first representative. In total the two representatives "seem to have spent . . . less than a full working day in the state in connection with this matter." 20 N. Y.2d at 382, 283 N.Y.S.2d at 38, 229 N. E.2d at 607. The friction eventually resulted in the termination of the distributorship for which McKee brought suit. In finding no contacts sufficient to sustain long-arm jurisdiction the court held:

> "There is no fixed standard by which to measure the minimal contacts required to sustain jurisdiction under the provisions of CPLR 302 subd. [a], par. 1). However, it seems to us the contacts here, rather than being minimal, were so infinitesimal, . . . in light of Hanson v. Denckla . . . that jurisdiction . . . cannot be sustained. Otherwise, every corporation whose officers or sales personnel happen to pass the time of day with a New York customer in New York runs the risk of being subjected to the personal jurisdiction of our courts." 20 N.Y.2d at 381, 382, 283 N.Y.S.2d at 37, 229 N.E.2d at 607. See McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L. Ed. 223 (1957).

■ Applying the above principles to the case at bar the court is constrained to find that Ethyl (of Canada) did not purposely avail itself of the privilege of conducting activities in New York. This conclusion obtains because the original contact between Ethyl (of Canada) and Chertok was precipitated by the latter. Most of the telephone conversations were initiated by Chertok, and it was at his direction that the oral agreement was reduced to writing and sent into New York. Moreover, Shannon's May 21 trip to New York was made at Chertok's behest to accommodate the convenience of the Ethiopian officials, and its duration was the one business day. Additionally, there is no suggestion that New York law would govern the transactions. The plaintiff then, in effect, has succeeded only in making a showing of his own activities within the forum. This type of presentation tortures the requirement that the defendant transact business within the state. As so aptly stated in Hanson v. Denckla, *supra*:

> "The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum state. The application of that rule will vary with the quality and nature of the defendant's activity. . . ."

357 U.S. at 253, 78 S.Ct. at 1239.

*See* Longines-Wittnauer Co. v. Barnes Reinecke, *supra*, 15 N.Y.2d at 451, 452, 261 N.Y.S.2d at 14, 209 N.E.2d 68 (1965); Hertz, Newmark & Warner v. Fischman, 53 Misc.2d 418, 279 N.Y.S.2d 97, 101 (1967).

Since the court is of the opinion that *in personam* jurisdiction was not obtained over the defendant the complaint must be dismissed.

So ordered.