Gary CARLSON, Plaintiff,

v.

Elizabeth Strong CUEVAS, Juan de Cuevas, and Elena Larrain Valdez, individually and as a representative of the Estate of Raymundo de Larrain, deceased, Defendants.

No. 95 Civ. 10195.

United States District Court,
S.D. New York,
Civil Division.

July 8, 1996.

Jeffrey Craig Miller, Miller and Korzenik, LLP, New York City, for plaintiff.

Brian Dunefsky, Michael S. Feldberg, Schulte Roth & Zabel, New York City, for defendant Elena Larrain Valdez.

### Opinion and Order

BAER, District Judge.[1]

Plaintiff Gary Carlson ("plaintiff") brings this cause of action against Defendant Elena Larrain Valdez, individually and as a representative of the estate of Raymundo de Larrain, ("the Larrain defendants") alleging tortious interference with contract, tortious interference with prospective advantage and disparagement of title.[2] This motion by the Larrain defendants seeks to dismiss the first six claims in plaintiff's amended complaint pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(5) for lack of personal jurisdiction and insufficiency of process. In plaintiff's seventh claim, he seeks a declaratory judgement as to rightful ownership of the painting. After hearing oral argument on this motion in early May and viewing the facts in the light most favorable to the non-moving party, the Court finds that the plaintiff failed to show an adequate basis for personal jurisdiction under New York's long arm statute. Accordingly, the first six claims in plaintiff's amended complaint are dismissed. The Court, however, does not reach the question of *in rem* jurisdiction because the parties have previously stipulated that this Court has *in rem* jurisdiction over the painting.

### Background

In February of 1995 plaintiff entered into a consignment agreement with Sotheby's, Inc. ("Sotheby's") to sell a Salvador Dali painting known as the "Portrait of the Marquis de Cuevas" ("Painting") at an auction for his benefit. The Larrain defendants claimed ownership rights to the painting and attempted to prevent the auction. Ms. Elena Larrain Valdez, a lifelong citizen of Chile who has not been to New York in two years, requested that her attorney in Florida pursue her ownership rights with Sotheby's. Defendants' attorney made approximately twelve phone calls and either sent or faxed an additional twelve pieces of correspondence to the auction house. Plaintiff argues that these communications contained either direct or implied threats in regard to defendant's claim of ownership. Subsequent to defendants' attorney's actions Sotheby's declined to proceed with the auction.

Plaintiff brought this claim against Ms. Valdez, alleging tortious interference with contract, tortious interference with prospective advantage, and disparagement of title. Plaintiff also asks the court to determine

---

1. Jason Sanders, a second year law student at The University of Michigan School of Law, aided in the research of this opinion.

2. As Elizabeth Strong Cuevas and Juan de Cuevas are no longer part of this action pursuant to a stipulation executed by both parties dismissing the action with prejudice as against them, on April 19, 1996.

rightful ownership of the painting. Ms. Valdez moves to dismiss the complaint for lack of personal jurisdiction, and insufficient service of process. The parties all stipulate that the court has *in rem* jurisdiction over the painting.

### Discussion

■ Generally, the plaintiff bears the burden of establishing jurisdiction over a defendant. *United Resources 1988–I Drilling and Completion Program, L.P. v. Avalon Exploration, Inc.,* 1994 WL 9676 (S.D.N.Y. Jan. 10, 1994). Personal jurisdiction in diversity actions is determined by the law of the forum in which the federal court sits. *Beckett v. Prudential Ins. Co. of America,* 893 F.Supp. 234, 238–39 (S.D.N.Y.1995). In New York, long arm jurisdiction over a defendant can be predicated on C.P.L.R. § 302(a) which states:

a court may exercise personal jurisdiction over any non-domiciliary ... who in person or through an agent:

 1. transacts any business within the state or contracts anywhere to supply goods or services within the state; or

 2. commits a tortious act within the state. . . .

N.Y.C.P.L.R. § 302(a).

■ In *International Shoe Co. v. Washington* the Supreme Court declared that one does not have to be physically present in a state to be subjected to that state's jurisdiction. 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). While the mere presence of the defendant is not necessary to a finding of proper jurisdiction, there are certain "minimal contacts" which must be found. *Id.; see also Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). For an interstate communication to "constitute a transaction of business subjecting [the defendant] to section 302(a)(1) jurisdiction, 'it is essential in each case that there be some act by which the defendant purposefully avails [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws. . . .' " *Beacon Enterprises, Inc. v. Menzies,* 715 F.2d 757, 766 (2nd Cir.1983) (quoting *George Reiner and Co. v. Schwartz,* 41 N.Y.2d 648, 394 N.Y.S.2d 844, 846, 363 N.E.2d 551, 552 (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1239–40, 2 L.Ed.2d 1283 (1957))).

■ When determining whether a defendant is considered to be transacting business in New York a "court must look at the totality of circumstances". *PaineWebber Inc. v. WHV, Inc.,* No. 95 Civ. 0052, 1995 WL 296398 at *2 (S.D.N.Y. May 16, 1995). This is especially important with telephone communications as the vehicle for sustaining § 302(a)(1) jurisdiction. The mere existence of defendant's telephone calls into New York are not sufficient to sustain New York long arm jurisdiction. *Beacon,* 715 F.2d at 766. Telephone calls are significant only if they are used by the defendant to actively participate in business transactions in New York. *PaineWebber,* 1995 WL 296398 at *3.

■ If the purpose of the calls is for the defendant to actively participate in business in New York, then they alone may support a finding of New York long arm jurisdiction under C.P.L.R. § 302(a)(1). *Parke–Bernet Galleries, Inc. v. Franklyn,* 308 N.Y.S.2d 337, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970) (using a phone to link a representative actively participating in a New York auction with the out of state defendant, the defendant subjects himself to New York jurisdiction); *Sluys v. Hand,* 831 F.Supp. 321 (S.D.N.Y.1993). The *Sluys* court held that a business which mailed a debt collection letter into New York subjected itself to New York jurisdiction. *Sluys,* 831 F.Supp. at 324. The court found that the letter was a "consumer-business" dispute in which preference is given to resolve the dispute in the consumer's location. *Id.* Often, if out of state defendants have a pattern of commercial or business dealings through telephone calls into New York, then they are subject to New York jurisdiction. *See Camel Investments Ltd. v. Transocean Capital,* 195 A.D.2d 533, 600 N.Y.S.2d 471, 472 (2nd Dep't 1993); *Otterbourg, Steindler, Houston & Rosen P.C. v. Shreve City Apartments Ltd.,* 147 A.D.2d 327, 543 N.Y.S.2d 978, 981 (1st Dep't 1989).

■ This case differs from those that exhibit such a pattern of dealings, or such a business intent by the defendant. In my

view, an interstate communication of one's rights, does not constitute a "business transaction" under C.P.L.R. § 301(a)(1). *See Stein v. Annenberg Research Institute*, No. 90 Civ. 5224, 1991 WL 143400 at *2 (S.D.N.Y. July 19, 1991); *Beacon*, 715 F.2d at 766. Both *Stein* and *Beacon* are factually similar to this case; they involve the interstate communication of property interests and threats of lawsuits. The defendant in *Stein*, believing that a manuscript designated to be auctioned by Sotheby's had been stolen from his institute's collection, contacted Sotheby's to request that they remove the piece from the auction. *Stein*, 1991 WL 143400 at *1. In the *Stein* case, Judge Stanton dismissed the plaintiff's complaint for lack of jurisdiction. *See generally, Stein*, 1991 WL 143400.

Similarly, in *Beacon*, the controversy centered around a "cease and desist" letter which alleged a trademark infringement and threatened possible legal action. *Beacon*, 715 F.2d at 766. The letter was sent to a New York corporation by a non-New York resident. *Id.* In finding that the court did not have jurisdiction under § 302(a)(1), the *Beacon* court stated that it was difficult to characterize such a letter as "an activity invoking the 'benefits and protections' of New York law." *Id.*

Plaintiff relies upon the number of communications to bring this case under New York's long arm jurisdiction. Courts, however, have consistently found that it is the quality of the communications, not the quantity, which amounts to the requisite business activity. *Lawrence Wisser and Co., Inc. v. Slender You, Inc.*, 695 F.Supp. 1560 (S.D.N.Y.1988); *Chertok v. Ethyl Corp. of Canada*, 341 F.Supp. 1251 (S.D.N.Y.1972). The court in *Wisser* did not find that the defendant had engaged in a business transaction within New York even though he had made 80 telephone calls and sent 30 faxes into the State. *Lawrence Wisser and Co., Inc. v. Slender You, Inc.*, 695 F.Supp. 1560 (S.D.N.Y.1988). In *Wisser*, the defendant had made the calls "on virtually a daily basis" into New York to keep her client abreast of her non-New York business services. *Wisser*, at 1562. The *Wisser* court stated "[I]t is not the *quantity* of communications

which makes the difference between transacting business in New York or not." *Wisser*, 695 F.Supp. at 1562.

 In a similar fashion, the *Chertok* court determined that it did not have jurisdiction over a non-New York resident who had engaged in sporadic business negotiations over the phone to New York. *Chertok v. Ethyl Corp. of Canada*, 341 F.Supp. at 1256. The Court stated that "the test is what kinds of acts and not how many. Therefore, it is axiomatic that there are no mechanical or quantitative rules to which a court may point for resolution...." *Chertok*, 341 F.Supp. at 1254 (internal quotations and citations omitted). Accordingly, a reliance upon the quantity of communications is misguided, for the basis of § 302(a)(1) is not the frequency of communications, but their substance. The plaintiff must do more than establish the "breadth" of the communication, he must also establish the business "depth" of the communication.

Here, plaintiff failed to establish the depth of the communications. The defendant neither purchased nor sold any services or goods in New York, she merely advised a New York company of her claim to property in their possession. Courts have consistently found similar communications insufficient to give rise to New York jurisdiction under § 302(a)(1). *Stein*, 1991 WL 143400 at *2; *Beacon*, 715 F.2d at 766. Therefore, in this case, jurisdiction can not be premised on § 302(a)(1).

 The plaintiff further alleges that jurisdiction is proper under § 302(a)(2). The Second Circuit has consistently interpreted § 302(a)(2) jurisdiction narrowly, finding that correspondence by a defendant into New York without more generally does not confer New York jurisdiction over the correspondent. *See Van Essche v. Leroy*, 692 F.Supp. 320, 324 (S.D.N.Y.1988) (Court found that a tortious letter mailed from a non-domiciliary to a New York corporation did not create a basis for New York jurisdiction under § 302(a)(2)); *Paul v. Premier Elec. Const. Co.*, 576 F.Supp. 384, 389 (S.D.N.Y.1983) (Chicago corporation was not subject to New York jurisdiction when it mailed a false no-

tice of lien to a New York bank); *See, also,* 1 Michael C. Silberberg § 8.23 at 64 & n. 207.

In *Stein, discussed supra,* the Court did not find New York jurisdiction under § 302(a)(2). *Stein,* 1991 WL 143400. The *Stein* court stated "the federal cases construing § 302(a)(2) . . . have uniformly held that jurisdiction under [this] section cannot be predicated on telephone calls made or letters mailed into the state." *Stein,* at *3 (citations omitted).

■ Plaintiff here fails to distinguish *Stein* from the case at bar and, instead, relies only on its unpublished nature to undermine its authority. Judge Stanton's discussion of § 302(a)(2) precedent is sound, however, and I concur with his analysis of it in *Stein.* To subject non-residents to New York jurisdiction under § 302(a)(2) the defendant must commit the tort while he or she is physically in New York State. Under the strict interpretation applied by courts in this Circuit, the phone calls made and letters sent by defendants' Florida attorney to New York are not enough to bring the Larrain defendants within the parameters of New York's long arm jurisdiction under § 302(a)(2). *Stein,* at *3; *Van Essche,* 692 F.Supp. at 324; *Paul,* 576 F.Supp. at 389. Accordingly, in this case, I find that jurisdiction can not be found under § 302(a)(2).

### Conclusion

For the reasons stated above, the Larrain defendants' motion to dismiss the first six claims of plaintiff's amended complaint is GRANTED. The court retains jurisdiction over the issue of rightful ownership of the painting. Therefore, the parties will continue discovery in accordance with the pretrial scheduling order with the trial date to be a non-jury declaratory judgement hearing. Any proposal for a change in that order must be submitted within two weeks from the date hereof and may prompt a pre-trial conference shortly thereafter.

SO ORDERED.