**AUREA JEWELRY CREATIONS, INC.,**
**Plaintiff,**

v.

**Larry LISSONA, Defendant.**

**No. 71 Civ. 3080.**

United States District Court,
S. D. New York.

June 9, 1972.

Pavia & Harcourt, New York City, for plaintiff.

Eaton, Van Winkle & Greenspoon, New York City, for defendant.

EDELSTEIN, Chief Judge.

## OPINION

Plaintiff Aurea Jewelry Creations, Inc., (Aurea) seeks the return of a sample line of jewelry which it had given to the defendant, Larry Lissona, in connection with his employment as a salesman. In the alternative, plaintiff demands judgment for $16,546.40, the alleged value of the jewelry. Defendant has moved pursuant to F.R.Civ.P. 12(b) (2) and 12(b) (5) to dismiss the complaint for lack of personal jurisdiction

and for insufficiency of service of process.[1] Plaintiff has moved pursuant to F.R.Civ.P. 65 for a preliminary injunction restraining the defendant from selling or otherwise disposing of the sample line of jewelry.

The court is presented with contradictory factual allegations from which to decide the jurisdictional issue. Accepting plaintiff's affidavits and complaint as true, without so deciding, O'Hare International Bank v. Hampton, 437 F.2d 1173, 1176 (7th Cir. 1971); Woodworkers Tool Works v. Byrne, 191 F.2d 667, 673 (9th Cir. 1951); Kesler v. Schetky Equipment Corporation, 200 F.Supp. 678, 679 (N.D.Cal.1961), the jurisdictional facts upon which the plaintiff relies are as follows: Aurea is a corporation organized under the laws of New York with its principal place of business in New York. Lissona is a citizen of California. Service on the defendant was effected in that state. On May 6, 1969, apparently at plaintiff's request, Lissona came to New York to sign his employment contract (attached as Exhibit "A" to plaintiff's complaint) and to pick up the sample line. Their contract provided that Lissona was to sell jewelry in Illinois, Michigan, Indiana, Ohio, Missouri and Wisconsin. All orders obtained by Lissona were to be mailed to Aurea in New York. There, Aurea would fill the orders and forward them directly to the purchaser. Lissona's salary and commissions were to be mailed to him from New York. Upon termination of the agreement by either party the sample line of jewelry was to be returned to Aurea. After signing the contract and obtaining the sample line, Lissona left New York.

Defendant made two additional trips to New York. The first of these occurred on August 1, 1969, for the purpose of attending a jewelry show. Subsequently, in January 1970, Lissona returned to the state for a discussion with a representative of plaintiff. The discussion, it would appear, was with Mr. Herbert L. Sirkin[2] regarding "general business matters." (Affidavit of Mr. George Funaro, treasurer of Aurea, at 1.) The duration of these two later trips exceeded one week.

During each of these trips discussions were held among Lissona and representatives of the plaintiff concerning Lissona's activities as a salesman. The plaintiff reimbursed the defendant for a substantial amount of his expenses incurred during these visits, notwithstanding an express contractual provision to the contrary. For undisclosed reasons the agreement between the parties has been terminated. Nevertheless, defendant has not returned the sample line of jewelry. Hence Aurea instituted the instant suit.

Aurea contends that Lissona subjected himself to the *in personam* jurisdiction of the court by transacting business within the meaning of the New York long-arm statute, C.P.L.R. Section 302 (a) (1). Undeniably C.P.L.R. Sections 302(a) (1) and 313 are the applicable provisions.[3]

---

1. Neither side has seen fit to address itself to the question of the sufficiency of service of process upon Lissona.

2. Sirkin's relationship to the plaintiff is unclear. However, Sirkin's correspondence with Lissona concerning employment matters (see letter attached to affidavit of Mr. George Funaro, Exhibit "A"), and his [Sirkin's] signature on Lissona's employment contract appear to indicate a position of authority with Aurea.

3. Section 302(a) (1) of C.P.L.R. states, in relevant part:

Personal jurisdiction by acts of non-domiciliaries
 (a) Acts which are the basis of jurisdiction.
As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any nondomiciliary . . . who in person . . . :
 1. transacts any business within the state.
 Section 313 of C.P.L.R. provides in pertinent part:
 A person . . . subject to the jurisdiction of the courts of the state under section . . . 302 . . . may be

Plaintiff asserts that Lissona's acts of signing the contract and obtaining the sample line of jewelry in New York, together with his two subsequent New York visits are sufficient purposeful activities to establish the minimum contacts required for the valid exercise of personal jurisdiction. International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154, 90 L.Ed. 95 (1945); McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); Hanson v. Denckla, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). *Accord,* Longines-Wittnauer Co. v. Barnes Reinecke, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). I do not agree.

 There are, of course, no mechanical or quantitative rules by which to measure the minimal contacts required to sustain jurisdiction under the provisions of Section 302(a)(1). Schroeder v. Loomis, 46 Misc.2d 184, 259 N.Y.S.2d 42, 45 (Sup.Ct. Broome County 1965); Franklin National Bank v. Krakow, 295 F.Supp. 910, 918 (D.D.C. 1969). *Accord,* McKee Electric Co. v. Rauland-Borg Corp., 20 N.Y.2d 377, 381, 382, 283 N.Y. S.2d 34, 37, 229 N.E.2d 604 (1967). Each case must be determined upon its own particular facts and circumstances, taking into consideration what kinds of acts occurred rather than how many. Lumbermens Mutual Casualty Company v. Borden Company, 265 F.Supp. 99, 106 (S.D.N.Y. 1967).

Plaintiff mainly relies upon the defendant's execution of the contract in New York as determinative of the jurisdictional issue, even though it has asserted other jurisdictional contacts. This reliance is misplaced.

 While it is true that some courts have concluded that the execution of a contract in New York is, of itself, sufficient to meet the transaction of busi-ness standard, *cf.* Patrick Ellam, Inc. v. Nieves, 41 Misc.2d 186, 245 N.Y.S.2d 545 (Sup.Ct. Westchester County (1963); Iroquois Gas Corp. v. Collins, 42 Misc.2d 632, 248 N.Y.S.2d 494 (Sup.Ct.1964), aff'd. 23 A.D.2d 823, 258 N.Y.S.2d 376 (App.Div. 4th Dept. 1965), the majority view holds that "physical presence in the state either during preliminary negotiations, or during execution or performance of the contract is [only one factor to be] considered in determining in a particular case whether one has engaged in 'purposeful activity' or has invoked the protection of New York's laws, such as to constitute 'transacting business' for the purposes of C.P.L.R. Section 302 (a)(1)." Franklin National Bank v. Krakow, *supra* 295 F.Supp. at 918, citing Longines Wittnauer Co. v. Barnes Reinecke, *supra. Accord,* United States v. Montreal Trust Company, 358 F.2d 239, 243 (2d Cir. 1966), cert. denied 384 U.S. 919, 86 S.Ct. 1366, 16 L.Ed.2d 440 (1966), petition for rehearing denied, 384 U.S. 982, 86 S.Ct. 1858, 16 L.Ed.2d 693 (1966); American Eutec. Weld. Alloys S. Co. v. Dytron Alloys Corp., 439 F.2d 428 (2d Cir. 1971); Standard Wine & L. Co. v. Bombay Spirits Co., 20 N.Y. 2d 13, 281 N.Y.S.2d 299, 228 N.E.2d 367 (1967); Green and White Construction Co. v. Columbus Asphalt Corp., 293 F. Supp. 279 (S.D.N.Y. 1968); Agrashell Inc. v. Bernard Sirotta Company, 344 F. 2d 583 (2d Cir. 1965) rehearing denied April 21, 1965; Electronics Devices, Inc. v. Mark Rogers Associates, 60 Misc.2d 322, 303 N.Y.S.2d 158 (Yonkers City Ct. 1969); *see generally,* Practice Commentary by Joseph M. McLaughlin appearing in New York Civil Practice Law and Rules, Section 302 (McKinney 1972). It is clear, therefore, that the jurisdictional issue turns on the *totality* of the non-resident's activities within the forum state. Longines-Wittnauer Co. v.

---

served with the summons without the state, in the same manner as service is made within the state, by any person authorized to make service within the state who is a resident of the state or by any person authorized to make service by the laws of the state . . . in which service is made or by any duly qualified attorney, solicitor, barrister or equivalent in such jurisdiction.

F.R.Civ.P. 4(e) permits the extraterritorial service provided for in Section 313.

Barnes Reinecke, supra, 15 N.Y.2d at 457, 261 N.Y.S.2d at 18, n. 5, 209 N.E. 2d 68. (emphasis added)

■ The purposeful activity in which the defendant engaged does not evidence a voluntary election to invoke the protection of the laws of New York. To the contrary, it manifests activity by the defendant required of him by the plaintiff. This kind of activity fails to comply with the requirements set forth in the New York long-arm statute. As stated in Hanson v. Denckla, *supra*:

"The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, *but it is essential in each case that there be some act [or acts] by which the defendant purposefully avails [himself] of the privilege of conducting activities* within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. at 253, 78 S.Ct. at 1240. (emphasis added) (omitted) *Accord,* Parke-Bernet Galleries, Inc. v. Franklyn, 26 N.Y.2d 13, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970).

In support of its position plaintiff contends that its case "is very close to that of Longines-Wittnauer Watch Co. v. Barnes Reinecke. . . ."[4] I cannot agree.

In *Longines*, defendant, a Delaware corporation operating in Illinois, manufactured certain machinery for the plaintiff. Before consummating the agreement, extensive negotiations were held both in New York, plaintiff's state of incorporation, and Illinois. Key officers of the defendant made some visits to New York. Although the contract expressly recited that it was made in New York and was to be governed by the laws of New York, it was actually executed in Illinois. After execution of the contract, but before delivery of machines, difficulties arose between the parties. In an effort to settle the differences defendant sent several of its officers, engineers and employees to New York. This resulted in the execution of a supplemental agreement in New York. Then the machines were delivered to the plaintiff. Thereafter several of defendant's engineers came to New York to participate in the installation and testing of these machines. This was in accord with the plaintiff's stipulation that acceptance of the machines would occur only after the machines had met certain tests following installation in New York. Following the acceptance of the machines, plaintiff discovered certain alleged defects on the strength of which it commenced suit pursuant to C.P.L.R. Section 302(a)(1) for breach of contract. In sustaining *in personam* jurisdiction the New York Court of Appeals stated:

"The activities in which the appellant engaged in this State were assuredly adequate to meet the liberal statutory criterion. They comprised substantial preliminary negotiations through high-level personnel during a period of some two months; the actual execution of a supplementary contract; the shipment for use here, subject to acceptance following delivery, of two specially designed machines . . . ; and the rendition of services over a period of some three months by two of the appellant's top engineers in "supervising the installation and testing of the complex machines." 15 N.Y.2d at 457, 261 N.Y.S. 2d at 19, 209 N.E. at 76.

Unlike *Longines*, Aurea and Lissona engaged neither in substantial preliminary nor in final negotiations in New York. Goods were shipped out of, rather than into, New York. Lissona's performance under the contract was to be exclusively in the specifically enumerated mid-western states. Lissona's visits, which were paid for by the plaintiff contrary to their agreement, were of short duration as compared to those in *Longines*. Moreover, the discussions held

---

4. This language is found in plaintiff's memorandum in opposition at 7.

in New York were for the purpose of resolving business differences. *See* McKee Electric Co. v. Rauland-Borg Corp., *supra*. Additionally, the only conduct complained of, namely, the failure to return the sample line of jewelry, took place in California. This case and *Longines* are clearly distinguishable.

In sum, the court finds that defendant's contacts with the New York forum are insufficient to establish the requisite jurisdictional predicate. The maintenance of this suit, therefore, would offend "traditional notions of fair play and substantial justice." Internat. Shoe Co. v. Washington, *supra*, 326 U.S. at 316, 66 S.Ct. at 158.

The motion to dismiss for lack of personal jurisdiction is granted.

The motion for a preliminary injunction is denied.

So ordered.