DEVELOPMENT DIRECTION, INC., Plaintiff,

v.

Grant E. ZACHARY d/b/a Zachary Associates, Defendant.

76 Civ. 667.

United States District Court, S. D. New York.

Dec. 1, 1976.

Friesner & Salzman, Great Neck, for plaintiff by Oleh A. Krup, Yonkers, of counsel.

Milton Thurm, New York City, for defendant.

1. N.Y.C.P.L.R. 302(a) provides in part:

(a) Acts which are the bases of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:

1. transacts any business within the state;

## MEMORANDUM AND ORDER

KEVIN THOMAS DUFFY, District Judge.

This diversity action arises out of a dispute between two fund raising consultants as to the division of certain fees and profits generated in connection with a fund raising campaign undertaken for the Catholic Diocese of Peoria, Illinois.

Defendant has moved to dismiss the complaint, pursuant to Rule 12(b)(2), F.R.Civ.P., for lack of *in personam* jurisdiction. Jurisdiction is based on Rule 4(d)(7), F.R.Civ.P., and N.Y.C.P.L.R. 302(a)(1) and 313; and service of process was made on defendant in Iowa. N.Y.C.P.L.R. 302(a), commonly referred to as the "Long Arm Statute," provides for personal jurisdiction over a non-resident defendant where the cause of action arises out of a transaction of business in New York by such defendant or agent thereof.[1] It is defendant's contention that he has not "transacted business" in New York within the meaning of that statute.

Plaintiff is a New York corporation. Defendant resides and does business in Minnesota. It is undisputed that in August 1974, defendant, in anticipation of obtaining a contract from the Catholic Diocese of Peoria, Illinois, to conduct its fund raising campaign, contacted the president of plaintiff corporation, by whom he had been employed some years earlier, to ascertain plaintiff's interest in assisting with the project. Plaintiff's president indicated substantial interest and an agreement was reached between them. Thereafter, plaintiff prepared for defendant's use a study entitled "Outline of a Survey for the Religious Education Fund Drive for the Greater Peoria Area," which stated on the cover that defendant was plaintiff's affiliate.[2]

2. Prior to August 1974, defendant had held himself out as an affiliate of plaintiff in non-related enterprises. The study in connection with this case was, it is noted, prepared entirely by plaintiff. Plaintiff contends that the agreement between defendant and the Diocese reflects such affiliation, but I do not find this to be the case. That contract merely indicates plaintiff's availability to participate in the Illinois fund raising campaign.

Plaintiff thereupon began preparation of a presentation to be submitted to the Diocese in Illinois. Apparently, upon this presentation, the Diocese subsequently based its choice to employ defendant as its fund raising consultant. Allegedly, in order to approve this presentation, defendant made his first and only trip to New York on October 12, 1976. All previous arrangements had been conducted by telephone or mail. After the presentation had been submitted to the Diocese, and a contract obtained for defendant's employment, the Illinois campaign commenced. During the course of the six-month campaign, defendant's campaign manager visited plaintiff in New York on a few occasions.[3] Plaintiff asserts that these visits were for the purpose of resolving certain labor problems that had arisen during the course of the campaign. Defendant additionally employed a New York resident in connection with the campaign, but there is no allegation that such employee worked out of New York, and indeed, defendant asserts to the contrary.

Plaintiff contends that its close association with defendant as to the preparation, presentation and initial work done to obtain the Diocese's business, coupled with the visits of defendant and his campaign manager to New York, evidence sufficient "purposeful activity" within New York to meet the "transaction of business" test. *Longines-Wittnauer Co. v. Barnes Reinecke*, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965). I agree.

The fact that plaintiff did substantial work in New York in connection with defendant's contract, and made an affiliation representation to which defendant did not object, is, however, in and of itself, irrelevant. A plaintiff cannot rely on his own activities within the state, rather than the independent activities of the defendant, to establish jurisdiction. *Haar v. Armendaris Corp.*, 31 N.Y.2d 1040, 342 N.Y.S.2d 70, 294 N.E.2d 855 (1973); see *Parke Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, n.2 at 19, 308 N.Y.S.2d 337, 256 N.E.2d 506 (1970). The independent activities of defendant in this case consist of the visits to New York which possibly evidence the shared arrangement with plaintiff.

Plaintiff contends, and correctly so, that it is the nature and quality, and not the amount, of New York contacts which determine the issue; and that even an isolated contact, if meaningful enough, is sufficient to confer jurisdiction. *Mendelson v. Fleischmann*, 386 F.Supp. 436 (S.D.N.Y. 1973); *EEC Corp. v. Slater Electric, Inc.*, 336 F.Supp. 148 (E.D.N.Y.1971); *Stark v. Spitz*, 38 A.D.2d 966, 331 N.Y.S.2d 709 (1972). In these cases, the New York visits, though brief, were essential and critical stages in the transaction in question. Likewise, in the instant case, notwithstanding the fact that the agreement between plaintiff and defendant was established at the time of the visits, on the record before me, the visits represented critical aspects of the entire transaction. The agreement between the parties to share the profit from the Illinois campaign was, in a real sense, contingent on defendant's obtaining the contract to conduct the campaign. The presentation, upon which the contract award was based, was therefore essential—and it was for the purpose of reviewing and approving this presentation that defendant came to New York. The amount of profit generated by the campaign, which profit is the basis of this suit, depended on the project's continued success; the labor strategy in which defendant's campaign manager personally participated in New York was critical in this regard.

*Aurea Jewelry Creations, Inc. v. Lissona*, 344 F.Supp. 179 (S.D.N.Y.1972), on which defendant relies, presents an entirely different situation. In that case, the non-resident defendant was brought into New York by plaintiff, and the activity in which he engaged "manifest[ed] activity by the defendant required of him by plaintiff." *Au-*

---

3. The precise number is in dispute. For the purposes of this motion, plaintiff's contention of five trips will be taken as true.

*rea Jewelry Creations, Inc. v. Lissona*, 344 F.Supp. at 182. Here, on the contrary, plaintiff performed at the behest of defendant; indeed, defendant had thrust himself into New York for the purpose of obtaining plaintiff's assistance with the Illinois campaign. Such activity evidences "a voluntary election to invoke the protection of the laws of New York," *Aurea Jewelry Creations, Inc. v. Lissona*, 344 F.Supp. at 182. Such activity also invokes the jurisdiction of the State and, of course, the jurisdiction of this Court.

Defendant's motion is denied.

SO ORDERED.