**LAWRENCE WISSER AND CO., INC., Plaintiff,**

v.

**SLENDER YOU, INC. and Kathryn Burton, Defendants.**

**No. 88 Civ. 1085 (RWS).**

United States District Court, S.D. New York.

Sept. 26, 1988.

Beldock Levine & Hoffman, New York City, for plaintiff; Lee F. Bantle, of counsel.

Donovan Leisure Newton & Irvine, New York City, for defendants; Louis C. Lustenberger, Jr., Joseph L. Clasen, III, of counsel.

## OPINION

SWEET, District Judge.

Defendant Kathryn Burton ("Burton") has moved for an order pursuant to Fed.R. Civ.P. 12(b)(2) dismissing the complaint for lack of personal jurisdiction. Plaintiff Lawrence Wisser and Co., Inc. ("Wisser and Co.") alleges that Burton is subject to jurisdiction under N.Y.Civ.Prac.Law. § 302(a)(1) and § 302(a)(3). For the reasons set forth below, Burton's motion to dismiss is granted.

*Facts*

For the purposes of this motion, the facts will be accepted as alleged by Wisser and Co. *See Hoffritz for Cutlery, Inc. v. Ama-jac, Ltd.,* 763 F.2d 55 (2d Cir.1985); *Martin E. Segal Co. v. Barton,* 612 F.Supp. 935 (S.D.N.Y.1985) (Sweet, J.).

Wisser and Co. is a New York corporation engaged in the business of providing advertising and public relations services. Burton, a citizen and resident of Oklahoma,

---

is the sole proprietor of The Burton Company, an unincorporated public relations business. Prior to becoming a citizen and resident of Oklahoma in December, 1986, Burton was a citizen and resident of Connecticut. Wisser and Co. is suing Burton for events arising out of an agreement by Burton to assist Wisser and Co. in its public relations work for Slender You, Inc. ("Slender You"), an Indiana corporation headquartered in Tennessee.

In the fall of 1986, John Fountain, Director of Marketing of Slender You, telephoned Lawrence Wisser ("Wisser"), President and owner of Wisser and Co., concerning the possibility of Slender You hiring an advertising and public relations service. After submitting a letter to the Chief Executive Officer of Slender You, Wisser and Co. was invited to submit a proposal to obtain Slender You's advertising and/or public relations business.

Following Wisser's conversation with Fountain, Wisser telephoned Burton in Connecticut and asked whether she would be interested in performing public relations work as an independent contractor on the "Slender You" account if Wisser and Co. were retained by Slender You. Burton indicated that she was interested in Wisser's proposal.

Throughout late fall of 1986, Wisser and Co. researched issues concerning Slender You's business and developed an 18 page proposal which it submitted to Slender You in conjunction with a presentation by Wisser in early December, 1986. Burton was not involved in the development of the proposal at this stage.

In March, 1987, Fountain asked Wisser to submit a second, more detailed proposal for final decision. Burton, working from her home in Oklahoma, helped draft this second proposal to Slender You. In April 1987, Burton assisted Wisser at an oral presentation in which Wisser described public relations work that Wisser and Co. could perform for Slender You. Slender You accepted Wisser and Co.'s offer to provide public relations services for at least one year, and agreed on costs.

While still in Tennessee, Wisser and Burton reached tentative agreement on the terms of Burton's engagement by Wisser and Co. for work on the Slender You Account. In a subsequent phone conversation initiated by Burton in Oklahoma to Wisser in New York, one term of the agreement was modified so that Burton would be paid two-thirds of the monthly retainer that Wisser and Co. was to receive from Slender You, rather than one-half of the retainer, as originally discussed. The final terms of the agreement between Wisser and Co. and Burton were confirmed in a letter to Burton dated April 17, 1987. It was agreed, among other things, that all work produced by Burton would be shown to Wisser and Co. before it was given to Slender You.

Between April and July of 1987, Burton worked on the Slender You account from her offices in Oklahoma City. Burton also made several trips to Slender You's offices in Tennessee, and traveled once to New England in connection with her work for Slender You. She did not travel to New York in connection with the Slender You account, but was in frequent contact with Wisser and Co. via telephone and telefax ("fax").

On July 21, 1987, Burton wrote a letter to Lawrence Wisser informing him that she was terminating her work for Wisser and Co. on the Slender You account. Six days later, Slender You notified Wisser and Co. that it was terminating its public relations contract with Wisser and Co. Apparently, Slender You hired Burton in place of Wisser and Co.

On February 16, 1988, Wisser and Co. filed suit against Slender You for breach of contract and tortious interference with contract and against Burton for breach of fiduciary duty, breach of contract and tortious interference with contract.[1] Wisser and Co. asserts personal jurisdiction over Burton based on two sections of the New York "long arm" statute: N.Y.Civ.Prac. Law. § 302(a)(1) and § 302(a)(3).

Neither Burton nor the Burton Company is registered or licensed to do business in

---

1. Wisser & Co.'s claims against Slender You have since been dismissed.

the State of New York; neither one maintains an office or owns or leases real property in New York. Moreover, neither Burton nor her company has employees, bank accounts or loans in New York. Neither has travelled to New York for business reasons, and neither has sued or been sued in New York, except for this action.

*Discussion*

In order to determine whether there is personal jurisdiction over Burton, several basic principles must be observed. First, in a diversity action, the law of the state in which the district court sits governs personal jurisdiction over a nonresident defendant. *United States v. First National City Bank*, 379 U.S. 378, 381–82, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir.1985); *Broadcasting Rights v. Societe du Tour de France*, 675 F.Supp. 1439 (S.D.N.Y.1987) (Sweet, J.). Further, where there has been no evidentiary hearing, plaintiff is required only to make a *prima facie* showing that personal jurisdiction exists over defendant. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d at 57. Finally, all pleadings and affidavits are to be construed in the light most favorable to plaintiff, and where doubts exist, they are to be resolved in plaintiffs favor. *Id.*

*N.Y.Civ.Prac.Law § 302(a)(1)*

§ 302(a)(1) provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who ...:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state.

Wisser and Co. argues that Burton was both transacting business within New York and supplying services in New York, and therefore comes within the scope of § 302(a)(1).

■ According to Wisser, Burton was in contact with Wisser and Co. on virtually a daily basis; he claims that from April to July, 1987, Burton was the initiator or recipient of over 100 communications with Wisser and Co. in New York (approximately 80 telephone calls and 30 faxes). Wisser and Co. argues that these numerous contacts constitute "transacting business" within the meaning of § 302(a)(1).

However, telephone calls and telefax transmissions do not, without more, constitute transacting business. Indeed,

no court has extended § 302(a)(1) to reach a nondomiciliary who never entered New York, who was solicited outside of New York to perform services outside of New York, who performed outside of New York such services as were performed.... We do not believe that ... the New York courts would exercise jurisdiction solely on the basis that defendants ... reported to their New York client ... by means of letters and calls to New York to perform their non-New York services.

*Mayes v. Leipziger*, 674 F.2d 178, 185 (2d Cir.1982). *See also Beacon Enterprises, Inc. v. Menzies*, 715 F.2d 757, 766 (2d Cir. 1983) ("New York courts have consistently refused to sustain § 302(a)(1) jurisdiction solely on the basis of defendant's communication from another locale with a party in New York").

Despite these authorities, Wisser and Co. stresses that the large number of phone and fax contacts places Burton in a different category. However, it is not the *quantity* of communications which makes the difference between transacting business in New York or not. Indeed, in *Parke–Bernet Galleries, Inc. v. Franklyn*, 26 N.Y.2d 13, 18, 308 N.Y.S.2d 337, 340, 256 N.E.2d 506, 508 (1970), the New York Court of Appeals predicated jurisdiction on a single phone call when a California defendant established a phone link between California and the agent of an auctioneer in New York. The Court held that the defendant's phone call constituted purposeful activity in New York.

In *Mayes v. Leipziger, supra*, however, the Second Circuit refused to find jurisdiction over a California attorney who never entered New York but who represented a New York client via phone calls and letters with the client's New York attorneys,

largely on the grounds that defendant did *not* purposefully avail himself "of the privilege of conducting activities within [New York], thus invoking the benefits and protections of its laws." 674 F.2d 178, 183 (2d Cir.1982), citing *McKee Electric Co. v. Rauland–Borg Corp.* 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (1967) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958)). *See also CT Chemical (USA) Inc. v. Horizons International, Inc.*, 106 F.R.D. 518, 520 (S.D.N.Y.1985) (Sweet, J.) (court sustained jurisdiction based on telephone conversations about the purchase of toluene from CT Chemical, noting that, as in *Parke–Bernet*, the defendant had "injected itself" into the New York market "in a manner that demonstrated the purposeful availment of the privilege of conducting activities in New York").

Therefore, the precedents are clear that what counts is not the quantity of contacts with New York, but rather the nature and quality of the contacts. *See Development Direction Inc. v. Zachary*, 430 F.Supp. 783, 785 (S.D.N.Y.1976). Where Burton performed all work outside of New York for a client based outside of New York and did not come even once to New York on business, she did not purposefully avail herself of the privilege of conducting activities in New York, and thus was not transacting business in this state within the meaning of § 302(a)(1).

In addition to the phone calls and faxes, Wisser & Co. argues that Burton was transacting business in New York based on the fact that as part of her duty to publicize Slender You in the media, Burton had made calls to magazines headquartered in New York. These calls are subject to the same analysis as her calls to Wisser & Co. and do not subject her to jurisdiction in New York.

Finally, Burton sent her work to Wisser and Co. in New York for comments and editing, and received payment originating in New York. Still, Burton's work was not performed in New York, but in Oklahoma, Tennessee and New England for the bene-fit of Slender You, an Indiana corporation based in Tennessee.

Because Burton was neither transacting business nor contracting to supply goods or services in New York State, plaintiff Wisser and Co. has failed to make out its *prima facie* case for jurisdiction under § 302(a)(1).

In addition to proving that Burton was transacting business in New York, § 302(a)(1) requires that Wisser & Co. establish that its causes of action arose from the transaction of business within the state. *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 419 N.E.2d 321 (Ct.App. 1981) (requiring an articulable nexus between the business transacted and the cause of action sued upon, and stating that the foreign defendant's transaction must "bear a substantial relationship to the transaction out of which the instant cause of action arose"). In *Martin E. Segal Co. v. Barton*, 612 F.Supp. 935 (S.D.N.Y.1985), this court refused to find jurisdiction over Barton, a California resident, where there was no showing that Barton's visits to New York were related to alleged violations of a noncompetition agreement. "The absence of a specific linkage between the New York activities and the cause of action ma[kes] jurisdiction improper," the court said. 612 F.Supp. at 937, citing *Pavlo v. James*, 437 F.Supp. 125 (S.D.N.Y.1977).

Here, Wisser and Co. has not shown a direct link between the contacts with New York—the phone conversations and faxes, and the contacts with magazines—and the causes of action.

*N.Y.Civ.Prac.Law 302(a)(3)(ii)*

■ Plaintiff's second basis for personal jurisdiction over defendant Burton is N.Y. Civ.Prac.Law 302(a)(3), which allows a court to exercise personal jurisdiction over any nondomiciliary who:

> commits a tortious act without the state causing injury to person or property within the state ... if he ... expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

Here, Wisser and Co. has not shown that Burton's actions caused injury in New York, and thus a jurisdictional claim based on § 302(a)(3) must fail.

Section 302(a)(3) requires that an injury occur in New York. Although the determination of whether a harm has occurred within New York has been called "difficult" and "complicated," *Trafalgar Capital Corp. v. Oil Producers Equipment Corp.*, 555 F.Supp. 305, 311 (S.D.N.Y.1983) (Weinfeld, J.) (*quoting Sybron Corp. v. Wetzel*, 46 N.Y.2d 197, 413 N.Y.S.2d 127, 385 N.E.2d 1055 (1978), and *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, 439 F.2d 428, 832 (2d Cir. 1971)), it is well-established that the injury in New York must be direct, and not consequential or remote. *Friedr, Zoellner (New York) Corp. v. Tex Metals Company*, 396 F.2d 300, 303 (2d Cir.1968); *Fantis Foods, Inc. v. Standard Importing*, 49 N.Y.2d 317, 425 N.Y.S.2d 783, 787, 402 N.E.2d 122, 125 (1980). Moreover, it is not enough that defendant's actions lead to economic loss in New York solely because of plaintiff's domicile or place of incorporation. For example, in *American Eutectic Welding Alloys Sales Co. v. Dytron Alloys Corp.*, *supra*, at 433–35, a New York corporation sued a Michigan corporation for allegedly inducing two former employees to breach their employment agreement in order to steal plaintiff's customers, who were located outside of New York. The Second Circuit noted that plaintiff suffered some harm in New York, for any lost sale affected profits. Nevertheless, the court held that such injury resulted only from plaintiff's domicile, and was thus insufficient for § 302(a)(3) jurisdiction. Similarly, in *Fantis Foods, supra*, the Court said:

> the residence or domicile of an injured party within a state is not a sufficient predicate for jurisdiction, which must be based upon a more direct injury within the state than the indirect financial loss resulting from the fact that an injured person resides or is domiciled there.

425 N.Y.S. at 787, 402 N.E.2d at 126.

More recently, in *Trafalgar Capital Corporation v. Oil Producers Equipment Corp.*, *supra*, a New York corporation brought a diversity action against a Tennessee corporation alleging breach of contract, tortious interference with contract, fraud, and inducing another to breach a contract in order to appropriate business. Plaintiff based jurisdiction over the tortious interference with contract and alleged appropriation of consulting services on CPLR § 302(a)(3). The Court in *Trafalgar* wrestled with the question of where the injury was located. Trafalgar Capital Corporation contended that damage was sustained in New York, the location of its business, but the Court, looking to *American Eutectic, Sybron,* and *Zoellner* for guidance, held that "[o]ther than the alleged loss of profits, there simply is no locus or contact within the state upon which a claim of injury within the state can be predicated." 555 F.Supp. at 313.

Here, the only injury to Wisser & Co. was the loss of patronage of a client in Tennessee, and the corresponding loss of profits from that customer in New York. The loss of profits cannot sustain jurisdiction.

Finally, Wisser and Co. cites *Marine Midland Bank v. Keplinger & Associates*, 488 F.Supp. 699 (S.D.N.Y.1980), which holds that where commercial misrepresentations are relied upon to the detriment of plaintiff, there is jurisdiction over the defendant. However, in *Marine Midland,* the plaintiff bank was injured when it disbursed monies in reliance upon allegedly tortious misrepresentations issued by the defendant. As the court explained, "since all disbursements ... were made by [the bank] in New York, the situs of the injury was in New York." *Id.* at 703. In this case, Wisser and Co.'s injury is the loss of a client and therefore of profits, which does not constitute injury in New York.

Because Wisser and Co. has not been injured in New York, there is no jurisdiction over Burton based on § 302(a)(3).

*Conclusion*

Upon the findings and conclusions set forth above, the motion to dismiss the com-

plaint is granted on grounds of lack of personal jurisdiction.

It is so ordered.