**Jonathan David BACHRACH, Plaintiff,**

v.

**Thomas KEATY and Robert Keaty, Defendants.**

**No. 88 Civ. 0797 (RWS)**

United States District Court,
S.D. New York.

Oct. 6, 1988.

Allan D. Pfeffer, New York City, for plaintiff.

Penzer & Sloan, New York City, for defendants; Carl R. Sloan, Morgan Kennedy, of counsel.

## OPINION

SWEET, District Judge.

Defendants Thomas and Robert Keaty ("the Keatys") have moved pursuant to Fed.R.Civ.P. 12(b)(2) and (5) to dismiss the complaint for lack of personal jurisdiction, or in the alternative, for a change of venue to the United States District Court for the Eastern District of Louisiana pursuant to 28 U.S.C. § 1404. Further, they have moved to strike immaterial, impertinent and scandalous matter set forth in the complaint. Plaintiff Jonathan David Bachrach ("Bachrach") has cross-moved for Rule 11 sanctions. For the reasons set forth below, the Keatys' motions are denied, and a hearing will be held on the issue of whether the Keatys have transacted business in New

York pursuant to N.Y.Civ.Prac.L. § 302(a)(1). Bachrach's motion for sanctions is deferred until completion of the jurisdictional hearing.

*Prior Proceedings and Facts*

In a memorandum opinion of May 3, 1988, this court declined to grant Bachrach the costs of personal service on Thomas Keaty and service by U.S. marshal on Robert Keaty. *Bachrach v. Keaty*, No. 88 Civ. 0797 (S.D.N.Y. May 3, 1988) (Sweet, J.) [available on WESTLAW, 1988 WL 45644].

Bachrach is a citizen and resident of New York and an attorney admitted to practice in this state. The Keatys are citizens and residents of Louisiana and attorneys admitted to practice in the states of Louisiana and Texas. Bachrach is suing the Keatys for alleged violation of a fee sharing agreement.

According to Bachrach, he and the Keatys entered into a verbal agreement in March, 1985, wherein Bachrach would refer a personal injury case brought by Connie and Gregory Byrd ("the Byrds") to the Keatys perform services in New York with regard to the case, consult with the Keatys and with the Byrds, and collect one-third of the fee earned by the Keatys, net of expenses. On March 22, 1985, the Byrds signed an employment agreement retaining the Keatys as their attorneys in return for 40% of any judgment or settlement. The case, *Byrd v. Bossier Parish District et al.*, was filed in the Parish of Bossier District Court, Louisiana. Bachrach claims that he performed his duties as specified under his agreement with the Byrds but that the Keatys have refused to pay him his fee.

In March, 1987, the Byrd case resulted in a settlement of approximately $1,300,-000.00, after which a fee dispute between the Byrds and the Keatys ensued. Eventually, the dispute was resolved, and the Keatys received fees for legal services rendered.

The Keatys deny that Bachrach referred the Byrd case to them and deny that any fee-sharing arrangement was made. The Keatys further deny that Bachrach performed services in connection with their representation of the Byrds in the Louisiana lawsuit.

The Keatys also deny that they have adequate contacts with New York to subject them to the jurisdiction of New York courts. According to their affidavits, neither of the Keatys is admitted to practice law in New York, they do not maintain an office or a bank account in New York, and they own no real property in New York. According to the Keatys, their contacts with New York are "casual and sporadic." Robert Keaty Affid. ¶ 5, Thomas Keaty Affid. ¶ 2.[1]

Bachrach, however, describes more extensive contacts between the Keatys and the State of New York. He asserts that the Keatys have appeared before courts in New York, that they pursue their professions in New York, and that they have been associated with many New York attorneys in this jurisdiction.

Bachrach has established, in the face of the Keatys' strong denials, that the Keatys were admitted to this district *pro hac vice* in the litigation surrounding the gas disaster in Bhopal, India. He has submitted a transcript of an April 16, 1985 hearing before the Honorable John F. Keenan in this court in which Judge Keenan stated that any attorney acting as counsel for parties in a Bhopal case "shall be deemed admitted pro hac vice to practice before this court in

---

**1.** Robert claims that he has represented one New York resident, the executor of a New York estate who sued Air New Orleans in federal court in Louisiana, but explains that he was retained in Louisiana and that the case was litigated in the Louisiana courts. He is also representing a New York resident against Air New Orleans in federal court in Louisiana. Further, he says that he came to New York on three or four occasions for the purpose of conducting depositions of witnesses in New York in an unrelated case pending in Louisiana, a case which ultimately settled in Louisiana in 1984. In addition, he says that he represented a seaman in the sinking of a ship in 1981 near Bermuda. The case was filed in the United States District Court for the Eastern District of New York, and Robert Keaty made one trip to New York in connection with that action. Thomas Keaty also claims that he has had few contacts with the state of New York.

connection with these actions." Robert Keaty signed as attorney of record in Bhopal litigation and was thus admitted pro hac vice under this order. Furthermore, the law firm of Keaty and Keaty was elected to the plaintiff's steering committee for Bhopal.

According to Bachrach's attorney, the Keatys represented 6200 plaintiffs in connection with the Bhopal litigation, many of whom were referred to the Keatys by Bachrach. Bachrach and the Keatys had signed a contract under which Bachrach and another attorney, Paul Khanna, would receive one-third of the fees earned by the Keatys on all Bhopal clients referred to the Keatys by them. The contract also provided that Bachrach would review documents associated with the case. In addition, the Keatys signed Bachrach's name to many of the pleadings, and, according to Bachrach, used his office in connection with the Bhopal litigation.

Bachrach claims that the Byrd case was referred to the Keatys expressly on the same terms as the Bhopal case and, as agreed, Bachrach performed work in New York on the Byrd case at the Keatys' request. The Keatys, however, claim that all services in connection with the Byrd case took place in Louisiana.

In addition to this referral relationship, Bachrach contends that the Keatys were in New York frequently on Bhopal-related visits, and Bachrach claims that he and the Keatys discussed the Byrd case every time they met in New York to discuss Bhopal. In particular, Bachrach claims that he and the Keatys discussed the Byrd case in 1985 at Baer, Marks & Upham in New York and at a meeting at the Helmsley Palace. The Keatys deny that they discussed the Byrd case in New York with Bachrach at these or at any other meetings.

Finally, it is alleged that the Keatys sent material on the Byrd case from their office in Louisiana to Bachrach's office in New York for his comment and advice, including an actuary loss report on Gregory Byrd, a draft copy of a complaint, and carbon copies of correspondence with the Byrds and that Bachrach also sent information to the Keatys.

*Discussion*

■ In order to determine whether this court may assert personal jurisdiction over the Keatys, several principles must be observed. First, in a diversity action, the law of the state in which the district court sits governs personal jurisdiction over a nonresident defendant. *United States v. First National City Bank,* 379 U.S. 378, 381–82, 85 S.Ct. 528, 530, 13 L.Ed.2d 365 (1965); *Cutco Industries v. Naughton,* 806 F.2d 361, 365 (2d Cir.1986); *Broadcasting Rights v. Societe du Tour de France,* 675 F.Supp. 1439 (S.D.N.Y.1987) (Sweet, J.). Further, in the absence of an evidentiary hearing, plaintiff is required only to make a *prima facie* showing that personal jurisdiction exists over defendant. *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.,* 763 F.2d 55, 57 (2d Cir.1985). Finally, all pleadings and affidavits are to be construed in the light most favorable to plaintiff, and where doubts exist, they are to be resolved in plaintiff's favor. *Id.*

*Doing Business—N.Y.Civ.Prac.Law § 301*

■ Pursuant to § 301, a corporation is "doing business" and is therefore "present" in New York for jurisdictional purposes with respect to any cause of action if it does business in New York "not occasionally or casually, but with a fair measure of permanence and continuity." *Hoffritz for Cutlery v. Amajac, Ltd.,* 763 F.2d 55 at 58 (quoting *Tauza v. Susquehanna Coal Co.,* 220 N.Y. 259, 267, 115 N.E. 915, 917 (1917)).

Factors to consider in determining whether a defendant is doing business in New York include whether the defendant maintains offices or a permanent locale from which to work in New York, has employees present in New York, has a bank account in New York, and carries on activities in New York with permanence, continuity and systematic regularity. *Standard Enterprises, Inc. v. Bag–It, Inc.,* 673 F.Supp. 1216 (S.D.N.Y.1987) (citing *Hoffritz for Cutlery v. Amajac, Ltd.,* 763 F.2d at 58 (2d Cir.1985)). However, there

is no set test for determining whether a defendant is doing business pursuant to § 301. Instead, "[e]ach case must depend upon its own facts." *Manchester Modes, Inc. v. Lilli Ann Corp.*, 306 F.Supp. 622, 624 (S.D.N.Y.1969).

There is no evidence that the Keatys have an office, bank accounts, employees or other property in New York. They are not licensed to practice law in New York. Further, the fact that the Keatys were admitted to this district pro hac vice in the Bhopal litigation does not constitute a sufficient measure of doing business "with a fair measure of permanence and continuity," *Hoffritz*, 763 F.2d at 58, and thus is not sufficient to sustain jurisdiction based upon § 301. Bachrach has not offered sufficient evidence to support an assertion of jurisdiction under CPLR § 301.

*Transacting Business—N.Y.Civ.Prac.Law § 302(a)(1)*

■ Bachrach argues that this court has jurisdiction over the Keatys based on the less demanding standards of N.Y.Civ. Proc.Law § 302(a), which provides:

As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary ... who ...:

1. transacts any business within the state....

To determine whether a nondomiciliary is transacting business in New York pursuant to § 302, it is necessary to determine whether that person "purposefully avails [himself] of the privilege of conducting activities within [New York] thus invoking the benefits and protections of its laws." *McKee Electric Co. v. Rauland–Borg Corp.*, 20 N.Y.2d 377, 382, 283 N.Y.S.2d 34, 38, 229 N.E.2d 604, 607 (1967), quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). Further, "the totality of all defendant's contacts with the forum state" must be examined to determine whether a defendant has purposefully availed himself of the privilege of transacting business in New York. *Cf. Cutco Industries v. Naughton*, 806 F.2d 361, 365 (2d Cir.1986). *See also Wichita Federal Savings and Loan Association v. Comark*, 586 F.Supp. 940, 944 (1984) (aff'd, 810 F.2d 1161 (2d Cir.1986)) ("[w]hether a court has personal jurisdiction over a party does not depend on any a priori formula. The issue revolves upon the cumulative significance of the sum of the activities conducted in New York rather than the effect of any one particular activity") (citation omitted). Bachrach contends that the Keatys have transacted business in New York within the meaning of § 302.

The Keatys point out that Bachrach's performance of legal services in New York in connection with cases—including the Byrd case—cannot establish jurisdiction over the Keatys, for "[a] plaintiff cannot rely on his own activities within the state, rather than the independent activities of the defendant, to establish jurisdiction." *Development Direction v. Zachary*, 430 F.Supp. 783 (1976). However, a defendant may be found to have engaged in purposeful transaction of business when a contract calls for the plaintiff to perform activities in New York for the benefit of the defendant. *Wichita Federal Savings and Loan Association v. Comark*, 586 F.Supp. at 944, citing *Schneider v. J & C Carper Co.*, 23 A.D.2d 103, 258 N.Y.S.2d 717 (S.Ct. 1st Dep't 1965). The ongoing relationship of the Keatys with Bachrach, if established, is some evidence of purposeful activity by the Keatys in New York, particularly when it is combined with the Keatys' visits to New York in connection with referred cases. A resolution of this issue will abide the jurisdictional hearing.

A factual issue exists as to whether the Keatys' contacts with the state were occasional and casual, or more substantial, thus serving as a predicate for jurisdiction based upon the Keatys' presence in New York in connection with the Byrd dispute. In addition to proving that the Keatys were transacting business in New York, § 302 requires that Bachrach establish that his cause of action arose from the transaction of business at issue. *McGowan v. Smith*, 52 N.Y.2d 268, 437 N.Y.S.2d 643, 645, 419 N.E.2d 321 (Ct.App.1981) ("[e]ssential to the maintenance of a suit against a nondomiciliary under CPLR 302 ... is the ex-

istence of some articulable nexus between the business transacted and the cause of action sued upon")....

As for the Keatys' contention in their Memorandum of Law that this action should be dismissed for improper service, this court notes that Robert Keaty has claimed that he will not dispute the validity of service. R. Keaty Affid. ¶ 4. In addition, this court, in its memorandum opinion of May 3, 1988, said that service had been effected.

Further, the Keaty's motion to strike immaterial, impertinent and scandalous matter set forth in the complaint pursuant to Fed.R.Civ.P. 12(f) is denied on the grounds that the relevant portions of the complaint describe the background to the Keatys' alleged refusal to share legal fees with Bachrach.

Until the question of jurisdiction has been determined, the motion on venue will be deferred.

*Sanctions*

Bachrach requests sanctions for time put into refuting the Keatys' misrepresentations as to their appearances in New York and misrepresentations concerning the referral of the Byrds by Bachrach. This application will be deferred until the completion of the factual hearing just described.

Discovery on the jurisdictional issue will be permitted and completed by November 11, 1988. The hearing will be held at 9:30 on November 18, 1988.

It is so ordered.