GCI 1985–1 LTD., a Colorado limited partnership, Plaintiff,

v.

The MURRAY PROPERTIES PARTNER-SHIP OF DALLAS, and Merry Land & Investment Company, Inc., Defendants.

Civ. A. No. 90–B–2039.

United States District Court,
D. Colorado.

Aug. 14, 1991.

R. Nicholas Palmer, Palmer & Paoli, P.C., Denver, Colo., for GCI 1985–1 Ltd.

Dale A. Gaar, Gulley & Gaar, P.C., Englewood, Colo., for Murray.

David S. Steefel, Lawrence Michael Zavadil, Holme Roberts & Owen, Denver, Colo., for Merry Land.

## MEMORANDUM OPINION
## AND ORDER

BABCOCK, District Judge.

On August 13, 1991, hearing was held on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) filed by defendant Merry Land & Investment Company, Inc. (Merry Land). Defendant Murray Properties Partnership of Dallas (Murray Properties) has reportedly settled with plaintiff. Merry Land contends that I have no personal jurisdiction over it. In the alternative, Merry Land asks that I transfer the action to the United States District Court for the District of North Carolina. Because the Colorado long-arm statute does not reach Merry Land and exercise of personal jurisdiction over Merry Land would violate due process, I grant the motion to dismiss.

According to the complaint, this dispute arises from an agreement (agreement) to provide cable television service to Chatham Woods apartment complex in High Point, North Carolina. The agreement was originally negotiated and executed in February, 1986, by Murray Properties, the owner of Chatham Woods at the time, and Gila Communications. In October, 1986, Gila Communications assigned the agreement to plaintiff GCI 1985–1 Ltd. (GCI). NCNB Texas Bank (NCNB) foreclosed on a mortgage on Chatham Woods and became the owner of Chatham Woods in February, 1989. In January 1990, NCNB sold the apartment complex to Merry Land. Merry Land subsequently wrote to GCI terminating the agreement.

GCI filed a verified complaint in the District Court, City and County of Denver, Colorado. The action was removed to this court. In the complaint, GCI alleges that Merry Land: (1) breached the agreement; (2) interfered with contracts between GCI and tenants of Chatham Woods, and; (3) intentionally interfered with a prospective business arrangement between GCI and another provider of cable television service.

■ To defeat the 12(b)(2) motion, GCI need only make a prima facie case of personal jurisdiction. *Kennedy v. Freeman,* 919 F.2d 126, 128 (10th Cir.1990).

The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facia showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Behagen v. Amateur Basketball Ass'n.,* 744 F.2d 731, 733 (10th Cir.1984) (citations omitted), *cert. denied,* 471 U.S. 1010, 105 S.Ct. 1879, 85 L.Ed.2d 171 (1985); *see Leidy's, Inc. v. H₂O Eng'g, Inc.,* 811 P.2d 38, 40 (Colo.1991).

■ GCI must satisfy a two-prong test to make its prima facie showing that I have personal jurisdiction over Merry Land. *See Schocket v. Classic Auto Sales, Inc.,* 817 P.2d 561 (Colo.App.1991). First, it must show that the Colorado long-arm statute, Colorado Revised Statute section 13–1–124, extends to reach Merry Land. This is a matter of Colorado state law. *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 786, 112 L.Ed.2d 849 (1991). Should I conclude that Colorado state law requires dismissal for lack of personal jurisdiction, then I must dismiss, for I may not exercise personal jurisdiction where Colorado state courts would not. Second, GCI must show that the requirements of the fourteenth amendment due process clause of the federal constitution are satisfied. *D & D Fuller CATV Constr., Inc. v. Pace,* 780 P.2d 520, 523 (Colo.1989); *see Taylor,* 912 F.2d at 431–32.

There are two ways to establish personal jurisdiction.

Jurisdiction may be either general or specific. General jurisdiction arises from

a defendant's continuous and systematic activity in the forum state. *See Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir.1988); [*Behagen,* 744 F.2d at 733]. Specific jurisdiction arises in the absence of such activity and is predicated on a defendant's minimum contacts with the forum which give rise to the cause of action. *Kennedy,* 919 F.2d at 128 n. 2. *See Waterval v. District Court,* 620 P.2d 5, 9 (Colo. 1980), *cert. denied,* 452 U.S. 960, 101 S.Ct. 3108, 69 L.Ed.2d 971 (1981). GCI contends that personal jurisdiction over Merry Land is found under either theory.

## I. REACH OF THE COLORADO LONG-ARM STATUTE

■ The first inquiry is whether the Colorado long-arm statute reaches Merry Land. The jurisdiction of Colorado courts extends to any person who engages in the transaction of any business within Colorado where the cause of action arises from the transaction of the business. Colo.Rev. Stat. § 13-1-124(1)(a). The jurisdiction also extends to any person who commits a tortious act in Colorado where the cause of action arises from the tortious conduct. Colo.Rev.Stat. § 13-1-124(1)(b). GCI relies on both these subsections of the long-arm statute.

### A. *Transaction of Business*

■ I employ a three-prong test to determine whether Merry Land transacted any business within Colorado:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or of causing important consequences in that state. Second, the cause of action must arise from the consequences in the forum state of the defendant's activities. Finally, the activities of the defendant or the consequences of those activities must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Van Schaack & Co. v. District Court,* 538 P.2d 425, 426 (1975); *see Panos Inv. Co. v. District Court,* 662 P.2d 180, 181 (Colo. 1983); *Waterval,* 620 P.2d at 9; *Marquest*

*Medical Prod., Inc. v. Daniel McKee & Co.,* 791 P.2d 14, 16 (Colo.App.1990).

Merry Land provides an affidavit from W. Tennent Houston (Houston), president and chief operating officer of Merry Land. Houston swears Merry Land (1) is a Georgia corporation with its principal place of business in Augusta, Georgia; (2) is involved in the ownership and management of apartment buildings and other real estate in Georgia, North Carolina and South Carolina; (3) has never had any offices, employees or agents in Colorado; (4) has never owned any property in Colorado; (5) has never transacted any business in Colorado and is not authorized to do so; (6) has never negotiated, executed or performed any contracts in Colorado; (7) has never solicited business or advertised in Colorado; (8) has never had meetings with GCI in Colorado; (9) acquired Chatham Woods through a transaction made completely outside Colorado; (10) did not know of the GCI agreement; (11) did not intend to assume any obligation of the agreement; and (12) contacted with the other cable television provider in North Carolina and Connecticut.

GCI does not contest any of Houston's averments. Rather, to establish that Merry Land transacted business in Colorado, GCI relies the affidavit from Charles Grover, a corporate officer of Gila when the agreement was negotiated and executed. Grover swears that (1) Gila negotiated the agreement in Colorado with two representatives from Murray Properties; (2) before negotiating the agreement, Murray Management Corporation, an affiliate of Murray Properties, negotiated and executed a similar agreement for an apartment complex in Colorado; (3) during the negotiations, Murray Properties representatives claimed to be developing a building in the Denver Tech Center as evidence of the financial stability of Murray Properties; (4) the agreement contains a Colorado choice-of-law clause; (5) Murray approved of Gila's assignment of rights to GCI; (6) all repair and installation calls from Chatham Woods were made to Colorado; (7) all payments for cable television service were

sent to Colorado; (8) royalty payments made pursuant to the agreement were paid from Colorado; and (9) all payment and programming decisions were made in Colorado.

In conjunction with this affidavit, GCI relies on the proposed fiction that by purchasing Chatham Woods from NCNB, Merry Land assumed Murray Properties' contacts with Colorado. I reject this argument and conclude that GCI fails to support jurisdiction under the "transaction of any business" clause of the Colorado Long-arm statute.

First, Merry Land did not negotiate the agreement or execute the agreement at all, much less do so in Colorado. *Ruggieri v. General Well Serv., Inc.*, 535 F.Supp. 525, 532 (D.Colo.1982). To the extent that Merry Land may be said to have assumed or been assigned the obligations of the agreement, the assumption or assignment took place outside Colorado when Merry Land purchased Chatham Woods from NCNB. Furthermore, it is undisputed that at the time Merry Land purchased Chatham Woods, Merry Land did not know of the agreement.

■ Although I consider the choice-of-law clause a factor weighing in favor of finding implied consent to jurisdiction, it is but one factor to be considered. *Stuart v. Spademan*, 772 F.2d 1185, 1195 (5th Cir. 1985); *see also Shepard's McGraw Hill, Inc. v. Legalsoft Corp.*, 769 F.Supp. 1161, 1164–65 (D.Colo.1991). The clause alone does not subject Merry Land to the personal jurisdiction of this court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 481–82, 105 S.Ct. 2174, 2186–87, 85 L.Ed.2d 528 (1985). Unlike a forum selection provision, the clause here designates the body of law applicable to resolving the dispute, not the location for its resolution. *Stuart*, 772 F.2d at 1195. Given the dearth of other contacts, the choice-of-law clause is not sufficient to confer personal jurisdiction. *See Keystone Helicopter Corp. v. Aviation Materials, Inc.*, No. 89–4804, 1990 WL 126160 (E.D.Pa. Aug. 27, 1990) (LEXIS Genfed library, Dist file), *aff'd mem.*, 931 F.2d 50 (3d Cir.1991).

As in *Trans–Continent Refrigerator Co. v. A Little Bit of Sweden, Inc.*, 658 P.2d 271, 273 (Colo.App.1982), there is no evidence that Merry Land came to Colorado to negotiate or execute the agreement, or that the agreement was part of or intended to give rise to extensive activity in Colorado. *See Equifax Serv., Inc. v. Hitz*, 905 F.2d 1355, 1357 (10th Cir.1990). It is the "prior negotiations and the contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" that establish the requisite minimum contacts. *Burger King Corp.*, 471 U.S. at 479, 105 S.Ct. at 2185–86; *Rambo*, 839 F.2d at 1421. Thus, GCI does not show that Merry Land purposefully availed itself of the privilege of acting in Colorado or causing important consequences in Colorado. *See Shepard's McGraw Hill*, 769 F.Supp. at 1163–65.

Second, although Murray Properties negotiated and executed the agreement in Colorado, I may not impute this conduct to Merry Land. *See Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. at 2183–84; *Rambo*, 839 F.2d at 1417–18 n. 3 (and cases cited therein). Thus, the activities of Merry Land and the consequences of those activities do not have a sufficient connection with Colorado to make the exercise of jurisdiction reasonable under either a general or specific personal jurisdiction theory.

Consequently, viewing the affidavits and testimony presented on this issue most favorably for GCI, the agreement between GCI and Merry Land does not constitute "transaction of business" in Colorado under Colorado Revised Statute section 13–1–124(1)(a).

### B. *Tortious Conduct*

■ The Colorado long-arm statute provides that by the commission of a tortious act within Colorado a person submits to the jurisdiction of Colorado courts concerning any cause of action arising from that act. Colo.Rev.Stat. § 13–1–124(1)(b). The Colorado Court of Appeals recently further defined the contours of this long-arm provision as applied to a claim for inducement to breach contract:

[A]n entity whose allegedly tortious conduct in another state causes injury in Colorado has committed a tortious act within Colorado for purposes of the long-arm statute. *McAvoy v. District Court,* 757 P.2d 633 (Colo.1988).

Thus, jurisdiction pursuant to § 13–1–124(1)(b) may not be exercised over a nonresident defendant for tortious conduct outside the state unless the injury itself occurred in Colorado. [*McAvoy,* 757 P.2d at 635–36; *Shon v. District Court,* 199 Colo. 90, 605 P.2d 472 (1980)].

Further, the injury in the forum state must be direct, not consequential or remote, and loss of profits in the state of plaintiff's domicile is insufficient to sustain long-arm jurisdiction over a nonresident defendant. *See Leeco Steel Products, Inc. v. Ferrostaal Metals Corp.,* 698 F.Supp. 724 (N.D.Ill.1988); *Lawrence Wisser & Co., Inc. v. Slender You, Inc.,* 695 F.Supp. 1560 (S.D.N.Y.1988); *Greene v. Sha–Na–Na,* 637 F.Supp. 591 (D.Conn.1986).

Hence, when both the tortious conduct and the injury occur in another state, the fact that plaintiff resides in Colorado and experiences some economic consequences here is insufficient to confer jurisdiction on a Colorado court. [*See McAvoy,* 757 P.2d at 636; *Shon,* 605 P.2d at 473–75].

Here, the trial court determined that plaintiff's alleged injury, namely the loss of anticipated profits from the operation of the New Mexico mine, was indirect and remote and resulted in derivative economic injury to plaintiff in Colorado only because of the fortuitous circumstance that plaintiff maintained its headquarters here. Accordingly, we conclude that, under the facts presented, the trial court properly determined that plaintiff had failed to make a prima facie showing of jurisdiction over the nonresident defendant for purposes of the long-arm statute. [*See* Colo.Rev.Stat. § 13–1–124(1)(b); *McAvoy,* 757 P.2d at 634–35].

*Amax Potash Corp. v. Trans Resources, Inc.,* 817 P.2d 598 (Colo.App.1991). I conclude that the Colorado Supreme Court would follow this reasoning.

■ The claims against Merry Land are strikingly close to the claim in *Amax.* Here, GCI contends that Merry Land induced a non-Colorado cable television service provider to cut-off contract negotiations with GCI. GCI also contends that Merry Land induced the tenants of Chatham Woods to breach their contracts with GCI. Likewise, the plaintiff in *Amax* claimed that the defendant had induced a non-Colorado company to breach a contract with plaintiff.

Merry Land's actions were committed in North Carolina and the tenants of Chatham Woods were also in North Carolina. There is no evidence that the other cable service provider was in Colorado. In *Amax,* as here, only the plaintiff was in Colorado, and the contract dealt with property outside Colorado.

The purported injury by GCI of Merry Land's alleged conduct is loss of anticipated profits. The same was true in *Amax.*

*Amax* is indistinguishable from the present case. The loss of anticipated profits from the potential contract between GCI and the other cable service provider, and the lost revenue from the contracts with Chatham Woods tenants injured GCI in Colorado only as a result of the fortuitous circumstance that GCI maintained its headquarters in Colorado. The purported injury from the alleged tortious conduct of Merry Land is indirect and remote. Consequently, the "tortious act" provision of the Colorado long-arm statute does not apply to Merry Land. In short, Merry Land finds itself before this court as a result of pure fortuitous circumstances.

Plaintiff's additional contention that Merry Land waived objection to personal jurisdiction is without merit.

II. DUE PROCESS

■ For the same reasons the Colorado long-arm statute does not reach Merry Land, the due process clause proscribes exercise of jurisdiction over Merry Land. GCI fails to make any showing that Merry Land engaged in continuous and systematic

activity in Colorado so as to warrant general personal jurisdiction. Merry Land's conduct "as a whole" does not demonstrate a "purposeful and substantial connection" with Colorado. *Rainbow Travel Serv., Inc. v. Hilton Hotels Corp.*, 896 F.2d 1233, 1239 (10th Cir.1990). GCI also fails to make a showing that exercise of specific jurisdiction is constitutionally permissible.

### C. *Transfer*

Because the claims against Merry Land must be dismissed for lack of personal jurisdiction, I need not reach the merits of its alternative motion for transfer.

Accordingly, it is ORDERED THAT defendant Merry Land & Investment Company, Incorporated's

(a) motion to dismiss for lack of in personam jurisdiction is GRANTED. The claims alleged in GCI's complaint against Merry Land & Investment Company, Incorporated are DISMISSED without prejudice;

(b) alternative motion to transfer to the United States District Court for the District of North Carolina is DENIED as moot.